NATIONAL SURETY COMPANY, Appellant, *v.* PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, Respondent and Appellant, and THE BANK OF AMERICA, Respondent.

(Argued October 9, 1929; decided November 19, 1929.)

*Stewart Maurice* and *Margaret O'Connor* for appellant. Under the conceded facts the defendant cannot avail itself of the matters pleaded as affirmative defenses. (*Weisser* v. *Denison,* 10 N. Y. 68; *Nat. Bank of Commerce* v. *Nat. Mechanics Banking Assn.,* 55 N. Y. 211; *White* v. *Continental Nat. Bank,* 64 N. Y. 316; *Crawford* v. *West Side Bank,* 100 N. Y. 50; *Shipman* v. *Bank of State of New York,* 126 N. Y. 318; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Gutfreund* v. *East River Nat. Bank,* 251 N. Y. 58; *Kearney* v. *Metropolitan Trust Co.,* 110 App. Div. 236; 186 N. Y. 611; *Metallurgical Sec. Co.* v. *Mechanics & M. Nat. Bank,* 171 App. Div. 321; *Spiegel Realty Corp.* v. *Gotham Nat. Bank,* 121 Misc. Rep. 547; 208 App. Div. 843; *American Exchange Nat. Bank* v. *Yorkville Bank,* 122 Misc. Rep. 616; 210 App. Div. 885; *Connors Car. Co., Inc.,* v. *Manufacturers & T. Nat. Bank,* 124 Misc. Rep. 584; 214 App. Div. 811.) The defendant failed to prove its alleged affirmative defenses of negligence, and estoppel by account stated. (*Ehrich* v. *Guaranty Trust Co.,* 194 App. Div. 658; 233 N. Y. 637; *Spiegel Realty Corp.* v. *Gotham Nat. Bank,* 208 App. Div. 843; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Gutfreund* v. *East River Nat. Bank,* 251 N. Y. 58; *Lockwood* v. *Thorne,* 18 N. Y. 285; *Stenton* v. *Jerome,* 54 N. Y. 480; *Newburger-Morris Co.* v. *Talcott,* 219 N. Y. 505; *Hughes* v. *Smither,* 23 App. Div. 590; 163 N. Y. 553; *Spain* v. *Talcott,* 165 App. Div. 815; 223 N. Y. 693; *Watson* v. *Gillespie,* 205 App. Div. 613; 237 N. Y. 522; *Carpenter* v. *Stillwell,* 11 N. Y. 61; *N. Y. Rubber Co.* v. *Rothery,* 107 N. Y. 310; *Hanna* v. *Florence Iron Co.,* 222 N. Y. 290; *Crocker* v. *Page,* 210 App. Div. 735; 240 N. Y. 638.)

*Henry Newton Arnold, John Tilney Carpenter* and *George N. Hamlin* for respondents. The contention that the drawee bank may not assert its defenses because it has recourse against a collecting bank is without merit.

(*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Gulfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *North British & M. Ins. Co.* v. *Merchants Nat. Bank*, 161 App. Div. 341; *Annett* v. *Chase Nat. Bank*, 196 App. Div. 632; *McNeely Co.* v. *Bank of North America*, 221 Penn. St. 588; *Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *American Exchange Nat. Bank* v. *Yorkville Bank*, 122 Misc. Rep. 616; 210 App. Div. 885.) The failure of the appellant and its assignor to notify and make claim against respondent, Bank of the Manhattan Company, for nine months after they had actual knowledge of the forgeries, was unreasonable as a matter of law. (*Prudential Ins. Co.* v. *Nat. Bank of Commerce*, 227 N. Y. 510; *Gulfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *North British & M. Insurance Co.* v. *Merchants Nat. Bank*, 161 App. Div. 341; *Annett* v. *Chase Nat. Bank*, 196 App. Div. 632; *Leather Manfrs. Bank* v. *Morgan*, 117 U. S. 96; *U. S.* v. *National Exchange Bank*, 45 Fed. Rep. 167; *McNeeley Co.* v. *Bank of North America*, 221 Penn. St. 588; *Connors* v. *Old Forge D. & D. Bank*, 245 Penn. St. 97.) The written approvals of account rendered by plaintiff's assignor to the respondent, Bank of the Manhattan Company, constituted a ratification of the payment of the checks and a waiver of claims against the bank. (*Harley* v. *Eleventh Ward Bank*, 76 N. Y. 618; *Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *North British & Merc. Ins. Co.* v. *Merchants Nat. Bank*, 161 App. Div. 341; *Hammerschlag Mfg. Co.* v. *Importers' & Traders' Nat. Bank*, 262 Fed. Rep. 266.) The failure of the depositor to discover the forgeries committed by its employee and to notify the drawee bank thereof, was negligence which precludes a recovery. (*Prudential Ins. Co.* v. *Nat. Bank of Commerce*, 227 N. Y. 510.)

KELLOGG, J. This action was brought by the National Surety Company, as assignee of Tucker, Anthony & Company, to recover from the defendant, President and

Directors of the Manhattan Company, a banking corporation with which Tucker, Anthony & Company maintained an account, the sum of $14,682.59, with interest. That sum had been debited to the account of the depositor, Tucker, Anthony & Company, because of payments made by the defendant, the Manhattan Bank, upon checks drawn by the depositor in favor of certain payees, whose apparent indorsements on the checks had been forged.

Tucker, Anthony & Company was a firm of stockbrokers. It had in its employ, from the year 1918 to the year 1924, a bookkeeper named Gyory. This clerk had charge of books which recorded the accounts of customers of the firm, whose names began with letters of the alphabet between the letters A and L. In January, 1921, Gyory entered upon a course of dealing which involved the manipulation of these accounts and the forging of the names of depositors to checks drawn by the firm to their order. This was his practice: He would first enter false credits in depositors' accounts under his control. He would then notify the appropriate officer of the company that these depositors desired checks for amounts identical with the amounts falsely credited. He would obtain checks to be written and signed for the sums named, payable to the order of the depositors, and would receive the same ostensibly for the purpose of making delivery to them. Instead of making delivery, Gyory would forge the names of the payees, place his own indorsements on the checks and deposit them in his bank of deposit, the Bank of America, for credit to his own account. Between January 18, 1921, and June 19, 1923, Gyory, by this method, obtained possession of thirty-nine checks, drawn by his firm to the order of twenty different customers, and, forging their indorsements thereto, deposited the same to his credit in the Bank of America. The Bank of America, guaranteeing the indorsements, presented these checks to

the defendant Manhattan Bank and obtained payment thereof. The amounts paid were charged by the Manhattan Bank to Tucker, Anthony & Company. Discovery of the forgeries was not made by that firm until January, 1924. Thereafter the firm assigned to the plaintiff its cause of action against the defendant bank to recover the sum of $14,682.59, the aggregate of the amounts so charged.

The defendant Manhattan Bank does not dispute that, in proving these facts, the plaintiff made a *prima facie* case of liability, on the part of the bank, for the recovery of the amounts charged against the depositor. It has defended on the grounds, (1) that an account stated between the bank and its depositor bars a recovery, (2) that the depositor's negligence estops it from making the claim, and (3) that the depositor's negligence caused damage to the defendant bank.

The account stated between the parties: At the close of each month, from January, 1921, to June, 1923, the Manhattan Bank returned to its depositor, Tucker, Anthony & Company, all the checks drawn by that firm which had been presented and paid by it during the month. This was accompanied by a statement of account showing the amounts deposited and the checks paid. At the request of the bank, Tucker, Anthony & Company each month returned to it a writing acknowledging the receipt of the vouchers and statement and the correctness of the statement. In *Harley* v. *Eleventh Ward Bank* (76 N. Y. 618) it was held that an account rendered by a banker to a depositor, and acquiescence therein by the depositor, with full knowledge of the facts, made out an account stated which was conclusive. The same principle was under discussion in *Shipman* v. *Bank of State of N. Y.* (126 N. Y. 318). It was there said, however: " The statement of the account made by the defendant to the plaintiffs from time to time, the balancing of the bank pass-book and the return of

the same to the plaintiffs with the vouchers, including, as they did, the checks in controversy, with the forged indorsements thereon, constitute no obstacle to the maintenance of this action by the plaintiffs as they were ignorant of the facts and circumstances under which the checks were issued and put in circulation." In *McIntire* v. *National Nassau Bank* (215 N. Y. 662) a depositor had signed a statement acknowledging the correctness of an account, which debited to the plaintiff a check to which the name of the plaintiff as maker had been forged. It was held that the plaintiff might have a recovery for the amount of the check which had been improperly charged against his account. When the statements, itemizing the accounts for the months between January, 1921, and June, 1923, were rendered to Tucker, Anthony & Company, it was ignorant of the fact that checks, upon which the names of the payees had been forged, were included therein. Consequently, the defense of account stated cannot prevail.

The depositor's negligence: It is urged that the depositor, Tucker, Anthony & Company, was negligent in not making prompt discovery of the forged indorsement upon its check of January 18, 1921, immediately upon the return by the defendant bank of the canceled vourchers for January and the rendering of its statement of account for that month. The clerk, Gyory, who forged the indorsement, although possessed of no assets, was then indebted to his employer in the sum of $26,000. In placing a forged indorsement of the payee's name upon the back of the January check, as well as in making all forged indorsements upon subsequent checks, Gyory made no attempt to simulate the handwriting of the payee. In the instance of every check forged by him he placed his own indorsement beneath the forged indorsement. Clearly, if Tucker, Anthony & Company had on some occasion, either upon the receipt of the bank's statement for January or upon the receipt of some sub-

sequent monthly statement, examined the indorsements on the returned checks, its suspicions would have been aroused. If it had then examined the accounts kept by Gyory, the falsity of the entries made would have been detected and the story of the forgeries would have been revealed. The difficulty is that no duty rested upon the depositor, upon the return of its vouchers by the bank of deposit, to examine the indorsements upon the checks in order to discover whether the signatures indorsed were genuine. (*Welsh* v. *German American Bank,* 73 N. Y. 424; *Shipman* v. *Bank of State of N. Y., supra.*) In *Welsh* v. *German American Bank* (*supra*) the decision is correctly expressed in the headnote, as follows: "A depositor owes no duty to a bank requiring him to examine his pass-book or returned checks, with a view to the detection of forgeries in the indorsements; he has a right to assume that the bank before paying his checks will ascertain the genuineness of the indorsements." In the respect charged, therefore, the conduct of Tucker, Anthony & Company was in no wise negligent. It is also urged that Tucker, Anthony & Company was guilty of negligence in not giving prompt notice to the Manhattan Bank of its discovery of the forgeries. As the record stands, discovery was made in January, 1924; the forgeries were not reported to the bank until October, 1924. We agree that the conduct of the depositor, in this respect, was negligent. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96; *Murphy* v. *Metropolitan Nat. Bank,* 191 Mass. 159; *Pratt* v. *Union Nat. Bank,* 79 N. J. L. 117.)

Estoppel by negligence: Of an estoppel arising from negligence, it has been said by Mr. Bigelow: " It is clear, however, that cases of estoppel arising out of negligence without a representation must be uncommon " (Bigelow on Estoppel [5th ed.], 653); and by Mr. Cababe: " It may be going too far to say that, in the nature of things, there can be no such cases; if so it will suffice to say that

negligence can only have any specific efficacy in giving rise to an estoppel, in those rare cases in which it proximately causes another to believe in the existence of facts, although it [the negligence] does not amount to a representation of those facts." (Quoted in Ewart on Estoppel, 111.) On the other hand, Mr. Ewart has said that " Cases of estoppel by carelessness are not at present uncommon," and that people guilty of negligence are " punished sometimes by damages, and sometimes by estoppel." (Ewart on Estoppel, 122.) The same author has said that there can be no estoppel without misrepresentation; that there can be no estoppel by carelessness where the misrepresentation is chargeable to the careless party, since an estoppel would ensue from the misrepresentation alone; that estoppel by negligence arises only " where the carelessness is by one person and the misrepresentation by another; that is, in cases of assisted misrepresentation " (p. 121).

The principle of estoppel by carelessness has recently received recognition by this court in *Gutfreund* v. *East River Nat. Bank* (251 N. Y. 58). In that case a depositor facilitated a forgery by a clerk, named Hunold, through signing checks so written by the clerk that false initials might be inserted in blank spaces left before the names of payees, designated in the checks by their surnames alone. " The spaces left in the check facilitated the forgery by Hunold. They were left by him for the purpose of enabling him to accomplish the fraud." In stating the grounds of the decision in *Young* v. *Grote* ([1827] 4 Bing. 253), Judge POUND said that they resolved themselves into " the principle that if the negligence of the depositor is the cause of the payment by the bank of a forged check he may not set up the invalidity of the paper which he has induced the bank to act on as genuine. This principle rests primarily on the doctrine of estoppel." It is true that in the particular instance the doctrine of estoppel by negligence was not applied to defeat a recovery

by the depositor. It was not applied for the reason that the bank was itself negligent and could not have been misled by the negligence of the depositor, the court remarking: " Mere negligence on the part of the depositor ought not to relieve the bank unless the bank has been misled by the negligent act." Otherwise, the case would have presented a typical instance for the application of the doctrine of estoppel by carelessness. The depositor, by his negligence, assisted a forger to make to the bank of deposit a forged representation of genuineness and thereby caused the payments of the forged checks to be made. There was thus before the court a true example of what Mr. Ewart has termed an " assisted misrepresentation," from which, had the bank been misled, an estoppel might have resulted, and the case was so treated by the court.

It has been held that a depositor owes the duty to his bank of deposit to examine the paid checks periodically returned to him by the bank with a statement of the account between the parties; that he must verify the writings upon the face of the vouchers by a reference to his notations made upon the stubs in his check book; that, if such an examination and reference would reveal a previous forgery, the neglect of the depositor to make it known might result in relieving the bank from making restoration of unauthorized payments, charged to his account, upon checks similarly forged and subsequently presented. (*Leather Manufacturers' Bank* v. *Morgan, supra; Critten* v. *Chemical Nat. Bank, supra.*) The Supreme Court of the United States, in the first of the two cases, and this court, in the second case, while holding that a depositor owes a duty to make such an investigation and is negligent if he fails therein, differed as to the consequences which might follow from the negligence. The Supreme Court held that such a depositor would be estopped by his carelessness from asserting a right of recovery; this court said that the bank of deposit might

offset against the recovery the damage done to it by the depositor's negligence. In the first case the Supreme Court said: " In other words, parties to a stated account may be estopped by their conduct from questioning its conclusiveness." In the second case this court said: " While we hold that this duty rests upon the depositor, we are not disposed to accept the doctrine asserted in some of the cases that by negligence in its discharge or by failure to discover and notify the bank, the depositor either adopts the checks as genuine and ratifies their payment or estops himself from asserting that they are forgeries." Again it said: " Nor, if the question were an open one in this State, would we deem the rule of estoppel or that of ratification a just one."

In the *Critten* case there was no estoppel, although the negligence of the depositor related to previous forgeries, a discovery of which, reported to the bank of deposit, might well have prevented loss, by causing the bank to withhold payments upon forged checks subsequently presented. In the case now before us all the forged checks paid by the bank were presented and paid before the depositor had been guilty of neglect. The depositor neither made misrepresentations as to the genuineness of the checks nor assisted the forger to make misrepresentations. It is clear, therefore, that if the depositor must suffer, the punishment to be inflicted cannot rest in a total defeat of its claim through estoppel. For the application of the doctrine of estoppel by carelessness there is here no room.

Damages through negligence: Although the defense of estoppel is not available, it may well be that the defendant bank of deposit has a cause of action in negligence to offset a recovery by the plaintiff depositor. Thus, in the *Critten* case it was said: " If the depositor has by his negligence in failing to detect forgeries in his checks and give notice thereof caused loss to his bank, either by enabling the forger to repeat his fraud or by depriving

the bank of an opportunity to obtain restitution, he should be responsible for the damage caused by his default, but beyond this his liability should not extend."

In our case the depositor was negligent in that it failed to make prompt disclosure to the bank of the forgeries after their discovery. It does not follow from this that the bank has a cause of action against the depositor. To the extent only that the bank has been damaged can it have relief. " Moreover, we see no reason why the bank should be entitled to anything more than indemnity for the loss the depositor's negligence has caused it." (*Critten* v. *Chemical Nat. Bank, supra.*) Damage may not be presumed and the burden of establishing it rests upon the bank. (*Critten* v. *Chemical Nat. Bank, supra; Murphy* v. *Metropolitan Nat. Bank, supra; Pratt* v. *Union Nat. Bank, supra; Janin* v. *London & S. F. Bank,* 92 Cal. 14; *Houseman-Spitzley Corp.* v. *American State Bank,* 205 Mich. 268; *Kenneth Investment Co.* v. *National Bank of Republic,* 96 Mo. App. 125.) " There is no presumption of disadvantage to the bank; that must be affirmatively shown." (*Pratt* v. *Union Nat. Bank, supra.*)

It is true that in *Leather Manufacturers' Bank* v. *Morgan* (*supra*) it was said that a bank of deposit need not show specific damage resulting from a depositor's delay in reporting forgeries; that it was enough that it might be prejudiced thereby in its pursuit of the forger to secure restitution. It must be remembered, however, that the court was applying to the case in hand the principle of estoppel and not of negligence. The court itself remarked that its ruling would be otherwise were the bank seeking to recover damages in negligence; that in such case " an inquiry as to the damages in money actually sustained by the bank " would be proper. As we have seen, the doctrine of estoppel may not be applied to a case of this character, so that the statements made by the court, in the case referred to, are not appropriate.

In the *Critten* case the forged writings were upon the

faces of the checks, and the forgeries would have been discovered by a comparison of the returned checks with the check book stubs. It was a case, therefore, where the depositor should have known of the forgeries when the account was first balanced and the checks returned. In so far as the bank was induced by the silence of the depositor to make payment of forged checks subsequently presented, the damage resulting from the depositor's negligence was definite and certain, for it was measurable by the payments so made. The depositor did not report the forgeries for many months after they should have been discovered. By this delay the bank may have been prejudiced in its right to proceed against the wrongdoer to obtain restitution of payments made upon the forged checks presented before the account was rendered. Yet the court held that the bank was not " entitled to credit for the two checks paid by it before the account was balanced and vouchers returned." This holding cannot be explained except upon the ground that there was no proof that the bank had been injured by the negligence of the depositor in not giving prompt notice of the forgeries.

Promptly upon its discovery of the forgeries, Tucker, Anthony & Company caused the forger, Gyory, to be taken into custody. He was indicted and, upon a plea of guilty, was sentenced to confinement in State's prison. Gyory was without financial resources. He had no money, or property of any kind. Moreover, as we have stated he was then indebted to his employer in the sum of $26,000. It does not appear that the bank, if promptly notified, could have taken other or more effective proceedings to obtain restitution than were taken by its depositor. It does appear that Gyory, prior to the imposition of sentence upon him, offered to make a payment of $2,000 in part restitution, and that the offer was refused. It may be that, upon a new trial, proof might be forthcoming that the defendant bank, to this extent, might have obtained reimbursement, if promptly notified of its

rights to proceed against Gyory. However, we think it otherwise appears that no injury befell the bank through the default of the depositor.

In the *Critten* case it was said: " In the present case, a check altered by Davis from the sum of $22 to $622 was paid by the defendant to the Colonial Bank, in which Davis had deposited it. Against that bank the defendant has ample recourse." The court then proceeded to state that if, because of their negligence, the plaintiffs might not recover from the bank of deposit, that bank could not recover from the Colonial Bank, which had guaranteed the genuineness of the check; that the Colonial Bank, to which the plaintiffs owed no duty, would thus be relieved because the plaintiffs had neglected a duty owed to a third party, the bank of deposit. The court said: "A rule which might operate to relieve that bank from the liability it assumed when it collected an altered check merely because the plaintiffs failed in their duty, not to it, but to a third party, should not be upheld."

In point of fact the bank of deposit was held liable for the amount of the check paid to the Colonial Bank on other grounds than those suggested in the words which we have quoted. The bank, under the doctrine explicitly laid down in the case, was responding to the cause of action of the plaintiffs, with a claim for damages occasioned by their negligence. This claim, like that of any plaintiff in a negligence action, was not maintainable if the bank itself had been contributorily negligent. It had thus been negligent since, prior to its payment of the Colonial Bank check, it had cashed a forged check of the depositor, upon which erasures and alterations, apparent to any beholder, had been made. As this was the point decided, the quoted remarks were undoubtedly *obiter dicta*.

When a depositor fails to warn his bank of forgeries committed, after discovery thereof should have been made by him, his neglect is a primary cause contributing to the loss incurred by the bank, when it pays out moneys

upon checks similarly forged which are subsequently presented. A cause of action, to recover damages from the depositor, for the original wrong thus done, accrues to the bank immediately upon its payment of the fraudulent checks. We are not disposed to think that the fact that the bank of deposit has a secondary remedy, against a bank presenting the checks and obtaining their payment, upon a guaranty written subsequently to the commission of the primary wrong, ought to defeat the cause of action and acquit the wrongdoer of liability for the tort, originally contributing to the loss. On the other hand, the depositor's failure to give prompt notice of discovered forgeries, as to checks paid prior to the discovery, self-evidently is not the cause of the damage done the bank by their payment. There the default may have occasioned, not the loss of the moneys, but an impairment of the remedy to procure restitution from the forger of the amounts paid. This wrong is committed subsequently to the perpetration of the forgeries, to the writing of the guaranties, and to the incurrence of loss through payment of the checks. At the moment of the commission of the wrong, the bank is already possessed of two causes of action to secure it against loss arising from the payments made. One is the slender reed of a cause of action against the forger to procure restitution; the other an all-sufficient remedy against a responsible bank upon its express guaranty of the genuineness of the writings. The failure of the depositor may have impaired the bank's remedy against the forger; it can in no way have impaired or in the least affected its remedy against the guarantor. In such case, since the bank of deposit has not paid out moneys through a fault of the depositor; since it retains, unimpaired by any neglect of the depositor, an ample remedy to obtain full reimbursement for the payments made; since, for these reasons, the bank has suffered no damage from the depositor's neglect; therefore, the bank has no cause of action against the depositor, with

which it may offset the damage incurred by him through its unauthorized act in making the payments. To this extent the dicta of the *Critten* case should receive application.

In our case, since the defendant, the Manhattan Bank, has a remedy over against its guarantor, the Bank of America, whereby it will be reimbursed for all the moneys which it has paid out upon the forged indorsements, we think it cannot justly maintain that it has been injured by the negligence of its depositor in delaying to report the forgeries after actual discovery thereof. Therefore, the plaintiff should have a recovery in full for the unauthorized payments.

The judgments should be reversed and judgment directed for the plaintiff in full for its claim, with interest and costs in all the courts.

CARDOZO, Ch. J., POUND, LEHMAN, O'BRIEN and HUBBS, JJ., concur; CRANE, J., not sitting.

Judgment accordingly.