W. A. MCLAUGHLIN, INC., Appellant, v. THE NATIONAL CITY BANK OF NEW YORK, Respondent.

First Department, February 14, 1930.

*Frank C. Delaney* of counsel [*George Brokaw Compton* and *Frank J. Dillon* with him on the brief; *Compton & Delaney*, attorneys], for the appellant.

*E. Crosby Kindleberger* of counsel [*Shearman & Sterling*, attorneys], for the respondent.

McAVOY, J.   The action was brought against the defendant bank where plaintiff kept an account.   The complaint states that one of plaintiff's employees, a bookkeeper, was unauthorized to sign checks of which plaintiff was the drawer, and that it had no knowledge that he [Cyril M. Webster], prior to October, 1928, when he was discharged, had been guilty of any defalcation.

Plaintiff had an account with defendant bank, and its balance was sufficient to pay all checks set out in the complaint.

Within sixteen months — beginning June 3, 1927, and ending September 29, 1928 — Webster prepared certain checks for the plaintiff which were payable to certain creditors of the plaintiff as payees. There were fifty-seven checks in number, and they aggregated over $17,000.   These checks were to eight different payees, and they were charged to the account of plaintiff by the defendant bank during the period mentioned.   At first there was about one check a month, and later several checks each month.   According to the complaint, these checks were never delivered to the payees, but were stolen by Webster, who was plaintiff's auditor and bookkeeper, by indorsing the payees' names and then depositing the checks without the payees' knowledge in a bank in Hoboken, where he had an account.   These checks were credited to the account of Webster in the Hoboken Trust Company, and from time to time, after June 3, 1927, the National City Bank paid these fifty-seven checks from plaintiff's account without plaintiff's consent or the payees' consent.

A demand was made for the aggregate amount of the checks, $17,003.63, for which the judgment is asked.

The three complete defenses, also pleaded as partial defenses, are:

(1) An account stated, which refers in detail to the rendering by defendant bank to plaintiff, as depositor, of monthly statements, and the return of all the checks that were paid.

These plaintiff accepted, made no objection to the correctness of any of them, but approved the same expressly; and each month, it is alleged, an account was thus duly stated, by which it was agreed between plaintiff and defendant that defendant was then in debt to plaintiff in such sums as were mentioned in the statements. The answer states the number and amount of all checks drawn, the deposits month by month, and the balance at the end of each of the months according to the statements of defendant, which plaintiff accepted. It is then alleged that by reason of the delivery of these statements of account to the plaintiff, and its approval and failure to object within a reasonable time to any of the items, the plaintiff is estopped from disputing the correctness of the statements and cannot recover for these payments on the forged indorsements of genuine payees.

(2) Webster was intrusted by plaintiff with the custody and posting of all its books of account, including the cash receipt book and bills payable book and general ledger; and that he made these personally or through his subordinates; that he was also intrusted with the making out of the face of checks, and with the duty of examining statements of the bank sent each month by the defendant to plaintiff, and in checking up the lists of checks and vouchers.

It is then alleged that the checks mentioned in the complaint were signed by officers of the plaintiff and paid by the defendant without knowledge of invalidity or irregularity on its part with respect to the indorsements. It is also set out that the indorsements of the names of the payees were made by Webster in his own undisguised handwriting, and that Webster, in violation of his duty, unlawfully abstracted the vouchers accompanying statements of account returned by the defendant to the plaintiff from time to time on or about the first of each month, comprising a total of fifty-four out of the fifty-seven checks mentioned, and destroyed the checks.

It is then stated that plaintiff had a duty as a depositor of the bank to promptly examine, on receipt from the defendant each month, all the statements of account and lists of vouchers, and to compare with the stubs in plaintiff's check book. Defendant then states that plaintiff negligently failed to examine these vouchers and compare them with the list of vouchers and to observe that fifty-four were missing; and that, if such comparison had been made at any month by the plaintiff through its officers or clerks other than Webster, the absence of vouchers would have been

discovered and the forgery of Webster detected and not permitted to run for eighteen months.

It is then alleged that there was no negligence on the part of defendant in paying plaintiff's checks, but by reason of plaintiff's gross negligence, it is foreclosed from holding defendant liable for the amount of any of the checks.

(3) Defendant repeats and realleges the allegations of the second defense, and alleges that plaintiff negligently failed to examine all of the checks and vouchers which defendant returned each month, but delivered all of them without examination to Webster, thereby giving him the opportunity to abstract and destroy the vouchers containing the false indorsements.

It is set out then that if plaintiff had examined the vouchers through any of its officers or employees, except Webster, it would have discovered not only that a large number of the names of the payees of its checks were indorsed in the same handwriting, Webster's, and that the amounts of checks paid to creditors did not correspond to the amount shown due to creditors on the books or the amount of purchases made by plaintiff from its creditors, but also that in many instances the checks shown in the stubs of the check book to have been paid to said creditors were greatly in excess of the amount shown in the bills payable book of plaintiff to be due said creditors and that said checks were in some instances duplications of previous checks to the same payee. It is then alleged that, by reason of the gross negligence of plaintiff, it is precluded from recovering.

There is quite a difference between this case and the case of *National Surety Co.* v. *Manhattan Co.* (252 N. Y. 247), recently decided. There are many facts not present in that case which are here admitted. There are many discrepancies here which a comparison of the checks with the check book would have imparted to an innocent party unaware of the forgeries. As was said in *Critten* v. *Chemical National Bank* (171 N. Y. 219): " The plaintiffs' position may be no worse because they intrusted the examination to Davis [a clerk who committed the forgeries] instead of to a third person; but they can be no better off on that account. If they would have been chargeable with the negligence or failure of another clerk in the verification of the accounts, they must be equally so for the default of Davis, so far as the examination itself would have disclosed the facts."

Various things might have been discovered by a clerk who was not himself the forger, but the fact that there were a number of vouchers extracted each month could have been discovered from the monthly bank statement and the list. The absence of vouchers

could have been discovered by a check-up and the forgery discovered. The checks ran to eight creditors of plaintiff, and the amounts of the checks did not correspond to the amounts shown by plaintiff's books. Many of the checks to the regular creditors were duplicated.

We think that under these circumstances it was proper to allow the defenses to stand as partial defenses only, but not as complete defenses.

The rule is that if any circumstance comes to the attention of the depositor to suggest an irregularity in the use of his checks, he may not shut his eyes to this and avoid the trouble of investigating; but as to the first forgeries, the missing checks and the other discrepancies would not have shown the depositor any circumstance for suspicion until they had been paid, and thus he was not under any duty as to them. The defense thus would not avail as to checks in advance of abstractions which might have been discovered.

In the pursuit of the investigation, it may be required to resort to an examination of indorsements on the checks, but that is merely to constitute a means of information. Until a circumstance of suspicion exists to start an inquiry, the depositor need not look for imaginary trouble by looking over indorsements on his checks, or making a comparison thereof.

The order should be modified by granting the motion to strike out the three defenses as complete defenses, and denying the motion to strike them out as partial defenses, and as so modified affirmed, with ten dollars costs and disbursements to the appellant.

DOWLING, P. J., MERRELL and PROSKAUER, JJ., concur.

Order modified by granting plaintiff's motion to strike out the three defenses as complete defenses, and denying the motion to strike them out as partial defenses, and as so modified affirmed, with ten dollars costs and disbursements to the appellant.