ELIZABETH C. HULLAR KRAUSE, Plaintiff, *v.* EMMA L. HULLAR and Another, Defendants.

Supreme Court, Onondaga County, February 21, 1930.

*Dodd, Lessen & Ginnelly* [*Frank Hopkins* of counsel], for the plaintiff.

*Lewis Howlett* [*James J. Kennedy* of counsel], for the defendant.

Ross, Official Referee. The action arises out of the following facts: On February 3, 1915, one Joseph Hullar, father of the plaintiff, and Emma L. Hullar, his wife (since deceased), executed and delivered to the plaintiff a bond and mortgage to secure the payment of the principal sum of $1,000 in three years from the date thereof and interest payable semi-annually, at five per cent, which said mortgage was recorded in Onondaga county clerk's office on February 2, 1916.

The plaintiff testifies that she advanced the money to her father at the time and has placed in evidence Exhibit 3, her check on the City Bank of Syracuse, for $1,000, dated February 1, 1915, payable to the order of Onondaga County Savings Bank and claimed to have been applied by Joseph Hullar on a mortgage held by said bank on the premises in question.

In 1916 the witness Frank J. Hullar, brother of the plaintiff, desired to make a loan of $1,000. He applied to Mr. Lawrence Hogan, a lawyer (since deceased), a search clerk, and also a friend. Mr. Hogan asked Mr. Hullar what security he could give and Mr. Hullar told him that he had none personally but that he could get some security. He applied to his sister, the plaintiff, and told her that he wanted to make a loan and " She let me have the mortgage in suit," which he took to Mr. Hogan.

Mr. Hogan examined the property and had Mr. Hullar obtain from his sister an assignment of the mortgage to Mr. Hogan's sister, Emma Hogan (since deceased).

Mr. Frank J. Hullar paid the interest on the mortgage from time to time and in 1919 paid the principal on the same. And what then occurred is perhaps best described in the language of Mr. Hullar when asked what occurred between Mr. Hogan and himself at the time of the payment of the mortgage. Testifying, he said: " I saw Larry [Mr. Hogan] downstairs here in the Court House, and I had already talked with him by 'phone and told him that I wanted to take care of the loan to pay him back, so I paid Larry the $1,000 and interest and whatever it may have been at the time. I don't recall that, but I paid Larry and Larry turned the mortgage and bond and insurance papers over to me and I took them back and gave them to Mrs. Krause [the plaintiff] and Larry told me at the

time that whatever was necessary to be done in a legal way that he would take care of it, that is, the filing, etc., pertaining to the legal transaction."

The papers were delivered by Mr. Frank J. Hullar to his sister, the plaintiff, and she testifies that she never saw the satisfaction and did not know of its existence until the beginning of this action. It was then discovered by the plaintiff that Miss Emma Hogan, to whom the mortgage was assigned, instead of executing an assignment to the plaintiff, executed a satisfaction of the mortgage on July 21, 1919, and it was recorded.

Anna Hullar, the first wife of Joseph Hullar, died November 19, 1923; Joseph Hullar died in May, 1929. Joseph Hullar and the defendant Emma L. Hullar were married on the 15th of June, 1926. Joseph Hullar and the defendant Emma L. Hullar executed a quitclaim deed to Isabel M. Grieb of the premises described in the mortgage in suit, and Isabel M. Grieb at the same time executed a quitclaim deed to Joseph Hullar and wife as tenants by the entirety.

It appears, and also has been stipulated by the attorneys, that the marriage of the defendant to Joseph Hullar and the deeds to and from Isabel M. Grieb were executed on June 15, 1926.

The witness Frederick Erhard testified to a conversation with Mr. Joseph Hullar, since deceased, in substance, that Mr. Hullar supposed he was signing a will instead of a deed. The whole transaction, the preparation and execution of the papers — show that a conveyance was intended, not a will.

It is the contention of the defendant that she is protected by the provisions of the Recording Act by reason of the satisfaction executed by Emma Hogan who at the time was the legal owner of the mortgage in question.

The cases cited by the defendant are distinguishable.

*Groesbeck* v. *Morgan* (206 N. Y. 385) was an action for specific performance. The vendee had waited five years before bringing suit. Meantime, the property had increased very largely in value, and specific performance was denied. On page 389, WILLARD BARTLETT, J., writing for the court, uses the following language: " No doctrine of equity jurisprudence is better settled than the rule that specific performance is not a strict legal right and is never granted when the lapse of time rendered such relief inequitable in its consequences, or, as many judges have phrased it, ' against equity and good conscience.' "

The case of *Larned* v. *Donovan* (155 N. Y. 341) was a case in which the former owner of a mortgage " Undertook to satisfy the mortgage which he had previously assigned to Donovan." It was held that the record of the assignment of the mortgage was notice

of the assignee's rights as against any subsequent acts of the mortgagee affecting the mortgage.

If before the payment of the loan for which the mortgage was pledged in the instant case, the mortgagee, the plaintiff, had attempted to satisfy the mortgage, the case then would be in point.

The only right the assignee, Emma Hogan, had in the mortgage on June 15, 1926, was the naked legal title.

The case of *Davies* v. *Jones* (29 Misc. 253), before HISCOCK, J., was a contest between two assignees of the same mortgage, both of whom gave a valuable consideration, and priority was given to the assignment first recorded although the other assignment had been executed a long time prior thereto.

The defendant's case presents no element of estoppel. However negligent the plaintiff has been, the defendant has in no way suffered. Mere negligence is not actionable unless the complainant has been misled. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247.)

The transactions present no features of fraud. The mortgagor had the right to give his daughter, the plaintiff, the mortgage without consideration. He had the right to execute it as a testamentary provision, but in fact it appears that it was executed for a good consideration actually received. In any event, Emma Hogan had no right to satisfy a claim belonging to the plaintiff.

So far as disclosed by the evidence, the defendant Emma L. Hullar is not a subsequent purchaser for a valuable consideration within the provisions of the Recording Act. It does not appear that she made any agreement to do or refrain from doing anything. The estate bestowed upon her was a gratuity without consideration and practically increased materially her marital rights. (*Ten Eyck* v. *Whitbeck*, 135 N. Y. 40.)

The position of the defendant has in no way been changed by any action or failure to act by the plaintiff. The latter has performed no act or omitted to perform no act or made any promise which in the slightest degree influenced the conduct of the defendant. The case is barren of any facts upon which an estoppel can be claimed, much less a fraud. Suppose the plaintiff had never recorded the mortgage. It would be valid under the evidence against the defendant. Mr. Joseph Hullar could give away no greater estate than he had. The Recording Act protects a purchaser for value but does not create an estate.

There is no evidence that when the defendant married Joseph Hullar she was in any way influenced by the condition of Mr. Hullar's title to the premises in question. He gave her an estate by the entirety in whatever estate he had and it would be grossly inequitable to enrich the defendant at the expense of the plaintiff.

Findings to be submitted and judgment in accordance is directed. The plaintiff is entitled to have the record of satisfaction of the mortgage executed by Emma Hogan corrected or canceled or both, and is entitled to foreclosure of the mortgage for the amount of principal and interest thereon at five per cent and costs.

I will take proof of amount due and appoint a referee to sell.