THE CITY OF NEW YORK, Plaintiff, v. BRONX COUNTY TRUST COMPANY, Respondent, and CENTRAL HANOVER BANK AND TRUST COMPANY et al., Appellants.

(Argued November 22, 1932; decided January 17, 1933.)

*Oscar R. Houston, Donald A. Gray, Felix A. Fishman* and *T. R. Iserman* for Central Hanover Bank and Trust Company et al., appellants. The appellants obtained good title to the checks. (*Sullivan* v. *Knauth,* 161 App. Div. 148; 220 N. Y. 216; *New York & New Haven R. R. Co.* v. *Schuyler,* 34 N. Y. 30; *Fifth Ave. Bank* v. *Forty-second St. & Grand St. Ferry R. R. Co.,* 137 N. Y. 231; *Gleason* v. *Seaboard Ry.,* 278 U. S. 349; *Lloyd* v. *Grace-Smith & Co.,* [1912] A. C. 716.) The city of New York in effecting recoveries from the wrongdoers, with knowledge of the facts, elected to pursue a remedy inconsistent with plaintiff's cause of action, thereby ratifying the payment of the checks by the appellants and the respondent. (*Fowler* v. *Bowery Sav. Bank,* 113 N. Y. 450; *American Defense Society* v. *Sherman Nat. Bank,* 225 N. Y. 506.)

*Wolfgang S. Schwabacher* and *Hyman N. Glickstein* for Interstate Trust Company, appellant. The issuance of the checks and their payment by the appellants were directly brought about by the negligence and dishonesty of the city's own officials in not exposing the frauds and preventing their continuance long before any one of the said checks was ever issued. The genuineness of the indorsements on the checks cannot be controverted. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219; *Leather Manufacturers Bank* v. *Morgan,* 117 U. S. 96; *North British & M. Ins. Co.* v. *Merchants' Nat. Bank,* 161 App. Div. 341; *Coggill* v. *American Exchange Bank,* 1 N. Y. 113; *Howard* v. *Duncan,* 3 Lans. 174; *Prudential Ins. Co.* v.

*National Bank of Commerce*, 227 N. Y. 510; *Morgan* v. *U. S. Mortgage & Trust Co.*, 208 N. Y. 218; *National Surety Co.* v. *Bank of Manhattan Co.*, 252 N. Y. 247; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *American Surety Co.* v. *Empire Trust Co.*, 228 App. Div. 572; *Municipal Service Real Estate Co.* v. *D. B. & M. Holding Corp.*, 257 N. Y. 423.)

*Charles L. Woody* and *Joshua D. Jones* for respondent. The checks were not valid obligations of the city of New York. No rights were acquired under the forged indorsements and the banks are liable on their indorsements. (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *City of St. Paul* v. *Merchants Nat. Bank*, 151 Minn. 485; *National Surety Co.* v. *National City Bank*, 184 App. Div. 771; *Second Nat. Bank* v. *New First Nat. Bank*, 7 Ohio App. 68; *Egner* v. *Corn Exchange Bank*, 42 Misc. Rep. 552; *Caledonia Ins. Co.* v. *National City Bank*, 120 Misc. Rep. 804; 208 App. Div. 83; *Ulmann* v. *Central Union Trust Co.*, 257 N. Y. 563; *Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26; *Strang* v. *Westchester Co. Nat. Bank*, 235 N. Y. 68.) The arrangement made by the city with its depositaries to facilitate the cashing of pay checks by city employees does not affect the liability of the indorsing banks to the respondent. (*Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *Leather Manufacturers' Bank* v. *Merchants' Bank*, 128 U. S. 26; *People* v. *Bank of North America*, 75 N. Y. 547.) The employees of the city were not acting within the scope of their duties and the city is not liable for their acts in putting these checks in circulation. (*Henry* v. *Allen*, 151 N. Y. 1; *Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *People* v. *Journal Co.*, 213 N. Y. 1; *Village of Ft. Edward* v. *Fish*, 156 N. Y. 363; *People ex rel. Smith* v. *Clarke*, 174 N. Y. 259; *People ex rel. Coughlin* v. *Gleason*, 121 N. Y. 631; *Bd. of Supervisors* v. *Ellis*, 59 N. Y. 620; *Haswell* v.

*Mayor*, 81 N. Y. 255; *People's Trust Co.* v. *Smith*, 215 N. Y. 488; *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247; *Nelson* v. *Mayor*, 131 N. Y. 4; *Miller* v. *Mayor*, 3 Hun, 35; *Keane* v. *City of New York*, 88 App. Div. 542; *Lyddy* v. *Long Island City*, 104 N. Y. 218; *People ex rel. Sweet* v. *Bd. of Supervisors*, 101 App. Div. 327.) There was no ratification by the city or election to pursue another remedy. (*Ramsay* v. *Miller*, 202 N. Y. 72.)

CROUCH, J. The action was originally commenced by the city of New York against the Bronx County Trust Company, one of the city depositaries, to recover the aggregate amount paid out by the trust company and charged to the city on 652 checks upon which the indorsements were forged. The checks had been cashed or deposited by the forgers at other banks, and when received by the trust company all bore the indorsement of the banks presenting them, under the legend " Prior indorsements guaranteed." After the commencement of the action the trust company paid the city the sum sued for, impleaded the indorsing banks on their indorsement and guaranty, and served each of them with a supplemental summons and answer. The Bronx County Trust Company may, therefore, be referred to as the plaintiff and the impleaded banks as the defendants. The trial court dismissed the plaintiff's cause of action. The judgment was reversed on facts and law by the Appellate Division, and judgment given *pro tanto* against the defendants.

The checks had been drawn to the order of fictitious city employees whose names had been fraudulently placed upon the records and payrolls of the Cromwell Avenue Garage, operated by the Department of Street Cleaning of the City of New York. The weekly payrolls were made up from the garage records under the direction of the garage manager by a clerk, and included the names of the men actually employed, as well as the fictitious names which had been added. Opposite the name of each employee was a statement of the hours worked and

of the amount payable. The payrolls thus prepared were certified as correct by the garage manager, and also by the superintendent of the district in which the garage was located, and were then forwarded to the Department of Finance. There the pay checks were made out, and the payroll returned to the garage with a pay check for each name shown on the payroll, including the checks payable to the fictitious names. Each check upon its face was drawn upon the Bronx County Trust Company, followed by the words, " Payable Upon Identification at Other City Depositaries." At the lower left-hand corner was a blank line, above which were the printed words, " Signature of Payee — For Identification Only," and underneath the line were the printed words, " Not an Endorsement." It was the duty of the manager of the garage before delivering the checks to require the payee to sign for identification in his presence upon the face of the check, and to sign also a receipt on the payroll. The checks payable to fictitious names were segregated by the manager and the clerk and receipted for on the payroll by the one or the other. Then one or the other would sign the payee's name on the identification line on the face of the check and at the same time indorse the payee's name on the back of the check, so that the fictitious name appeared in the same handwriting on the payroll, on the face and on the back of the check. The checks in bunches were then either cashed or deposited at the defendant banks under an assumed name, or cashed by a confederate. In every case the check bore the further indorsement of the name or assumed name of the person presenting it for payment or deposit.

Except for the identification feature of these checks they differed not at all from the usual and customary form of check. The indorsement of the fictitious names was, therefore, a forgery. (*Shipman* v. *Bank of State of New York*, 126 N. Y. 318; *National Surety Co.* v. *National City Bank*, 184 App. Div. 771.) The forgers,

though city employees, were not acting within the scope of their duties, and their knowledge was not the knowledge of the city. (*Shipman* v. *Bank of State of New York, supra; Henry* v. *Allen,* 151 N. Y. 1; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 230; *Prudential Ins. Co.* v. *National Bank of Commerce,* 227 N. Y. 510.) The checks, therefore, were not payable to bearer under Negotiable Instruments Law, section 28; nor could they pass by indorsement. (Neg. Inst. Law; Cons. Laws, ch. 38, § 42.) The plaintiff, by reason of the foregoing facts, was bound to reimburse the city for the moneys paid out by it, unless it could claim full protection upon some principle of estoppel or full or partial protection by way of set-off for some negligence chargeable to the city.

The plaintiff paid the city without contesting the claim. It says it did so because there was no defense available to it since (a) it had a remedy against the indorsing banks and, therefore, suffered no damage; and (b) it did not rely upon the forged signatures, but upon the indorsement and guaranty by the indorsing banks. It is not necessary to consider the validity of the assigned reasons further than to say that *National Surety Co.* v. *Manhattan Co.* (252 N. Y. 247) is not, upon the facts here, an authority for proposition (a).

The only defenses theoretically open to the plaintiff against the claim of the city were estoppel and negligence by way of set-off. (*National Surety Co.* v. *Manhattan Co., supra.*) Under the peculiar facts of this case, the defense of estoppel is equally available to the defendants and will be considered below. The defense of negligence in cases of this sort is ordinarily available only to the drawee bank, to which alone, it has been said, the depositor owes a duty of care. (*Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74, 80; *Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 229.) The doctrine of privity, however, is not so conclusive as it once was. Whether there may

be negligence under circumstances which would carry the tort liability of a depositor beyond his contract undertaking (Cf. *Ultramares Corp.* v. *Touche,* 225 N. Y. 170), we do not stop to inquire, for the question is not here. The broad charges of negligence are not made out. While it is true that there had been similar forgeries for two years before the earliest one involved here, the forgeries were in the indorsements. So far as the evidence shows, no facts came to the city's knowledge as in *Prudential Ins. Co.* v. *National Bank of Commerce* (*supra*), to put it upon inquiry. Lacking such warning it had a right to rely upon the vigilance of the banks in detecting forged indorsements. Nor can it be justly said that there was negligence in the issuance and delivery of the checks. No fault is or can be found with the system of payment used by the city. It provided for careful and detailed records of the work done by all employees at the garage, and it required the payrolls made up from those records to be separately certified by two responsible officials. The old satiric query, *Quis custodiet ipsos custodes,* is no reply to this. True it is perhaps, that if there had been other officials to watch those whose duty it was to watch, discovery might sooner have been made. But the city was not bound to anticipate a criminal conspiracy among its trusted employees (*Peoples Trust Co.* v. *Smith,* 215 N. Y. 488); nor did it, as a depositor, owe the duty of such extraordinary vigilance even to the plaintiff drawee, much less to the defendants. (*Paton Co.* v. *Guaranty Trust Co.,* 227 App. Div. 545; affd., 254 N. Y. 621.)

We come, then, to the one substantial question. This system of payroll payment was first put in use by the city of New York in 1915. There were at that time 135 depositary banks with which the city had accounts. To each of those banks, including all the parties to this action, was sent a letter which referred to the pay plan as having been devised for making pay checks of the city of

New York " as good as currency;" and stated, among other things, that the plan included " the use of a self-identifying check," and further that " the circular which I am enclosing describes the way employees make out checks so as to make the signature, in effect, certified by the city." There was inclosed a list of the banks which had assented to the plan. The circular to which reference was thus made was a copy of one which had been distributed to all city employees, describing the new pay check and giving directions for its use. Among other things, the employees were told that "the banks listed below have assured the comptroller that they will cash all checks presented by city employees when properly identified."

The contention of the defendants is that out of that arrangement and the subsequent course of dealing thereunder there arose between the city and its 135 depositary banks a contractual relationship, or at least an understanding, by virtue of which, either contractually or by estoppel, any bank taking one of the city's pay checks would acquire good title thereto, if the indorsement of the payee on the back corresponded with the identification signature on the face

Contract there was not. There is no indication that the banks' " assurance " that they would cash all checks presented by city employees when properly identified was anything more than an assurance. The letter with its accompanying circular merely described the new plan of payment with expressions of expectation as to how it would operate. So far as the evidence shows there was nothing to prevent the defendants from refusing to cash a check even when the payee was properly identified.

It seems equally clear that the doctrine of estoppel has no application. It is matter of common knowledge that a bank in cashing a check or in accepting it for deposit ordinarily relies only upon the responsibility of the party, usually its own customer, with whom it deals. It pays no attention to indorsements other than his.

Upon no other basis could the banking business be carried on. Moreover, the evidence of the defendant bank chiefly interested here shows that it took the checks in question solely upon the indorsement of its own customer. It " did not look beyond that." The defendants as matter of fact were not misled by any act or omission of the city nor by any understanding with it. If, however, we pass over what was actually done and look only to the face of the letter and circular, no warrant will be found for saying that the defendants, had they chosen so to do, were at liberty to identify the payee solely by a comparison of the two signatures, or that they had been led to believe that they were. " The circular," says that letter, " describes the way employees make out checks so as to make the signatures, in effect, certified by the city." The way the employees were directed to make out checks to the end mentioned is stated thus in the circular: " When you take the check to the bank for payment you should endorse it in the presence of the paying officer, unless the bank waives this obligation." So far as the city was concerned that act by the paying party was obligatory as part of the identification. Somewhere along the line between the issuance of the check and its payment by the drawee bank identification by that method was essential, unless the paying party chose to waive it; and clearly any waiver was at the risk of that party, and of subsequent parties. In the case of none of the questioned checks was there an indorsement in the presence of the person paying.

There is a further contention that a ratification of the payment of the checks by the banks arose from the act of the police authorities in taking certain moneys found in the possession of the forgers. This, it is said, amounted to the election of an inconsistent remedy. Even if the police can be said to have been acting as agents of the city, there seems to be no good reason why the city was not at liberty to pursue both the forgers and the banks

in civil actions for the recovery of its loss without surrendering its rights against either until it had been paid. Election of remedies is a defense only "when a choice is exercised between remedies which proceed upon irreconcilable claims of right" (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 291), and has no application to the pursuit of remedies against parties concurrently liable, short of payment and satisfaction. (*Sciaballa* v. *Illinois Surety Co.*, 166 App. Div. 677; affd., 215 N. Y. 692.)

The judgment should be affirmed, with costs.

LEHMAN, J. (dissenting). The city of New York pays its employees by checks made out to their order. The checks have some unusual features. Though drawn on a particular depositary, they state upon their face: "Payable upon identification at other city depositaries." Printed upon their face are also the words: "Signature of Payee — For Identification Only." Below these words is a blank space for the signature of the payee and below the blank the words: "Not an endorsement." Six hundred fifty-two checks, signed by a duly authorized officer of the city, purporting to be payable to the order of a named payee and to be indorsed by that payee, were received from other depositary banks by the defendant Bronx County Trust Company, upon which these checks had been drawn. The checks so received were paid by the Bronx County Trust Company and charged to the deposit account of the city. The blank left for the identification signature, on the face of the checks, had been filled in and the indorsements were in the same handwriting as the identification signature. The Bronx County Trust Company, in paying these checks, probably did not examine the identification signature in order to discover whether the indorsements were in fact made by the payees. All prior indorsements were guaranteed by the banks which presented the checks and the evi-

dence establishes that the Bronx County Trust Company relied on this guaranty rather than on an examination of the prior indorsements.

Ordinarily, a bank upon which a check is drawn to the order of a named payee, can charge such payment against the drawer of the check only if the check is, in fact, indorsed by the payee. Otherwise the check is not paid in accordance with its tenor. The bank usually does not know the payee or his signature. Nevertheless, it is bound, at its peril, to identify the payee and his signature before payment. Here, however, the drawee has himself provided the means for such identification by the use of a check bearing a blank for an identification signature. Without other explanation for the use of such a form of check, the inference would be clear that the check itself contained an invitation, to the bank on which it was drawn, or to third parties dealing with the apparent holder of the check, to rely on the identification signature for the identification of the payee and the validity of the indorsement of the payee. True, no person would, in the absence of a promise to the drawer, be bound to accept such invitation. Though a depositary bank is usually bound, by contract with its depositors, to pay, according to their tenor, checks drawn by a depositor on his account, a payee has no right of action against the bank for failure to make such payment. Before such checks are paid, a careful bank will usually, for its own protection, require identification of the payee or the guaranty of his indorsement by another bank or responsible party. In the same way even if a depositary bank has assumed a contractual obligation to a depositor to pay checks when presented to it indorsed by a payee whose indorsement is identified by an "identification signature," it might still, for its own protection, require the indorsement to be made in its presence in order to avoid the risk of deception through a forgery made possible by tracing the identification signature or other

trick. Nevertheless, when the drawer of a check has directed a depositary bank to pay a check when indorsed by the party whose signature has been placed upon the face of the check for purposes of identification, or has invited third parties to act upon such indorsement, the drawer should be estopped from denying that the check was, in fact, not indorsed by the payee to whose order the check was drawn.

I have said that the form of the check alone might well justify an inference that the drawer of the check invites both the depositary bank and third parties to accept the " identification signature " as an identification of the payee's indorsement. In this case, however, the invitation, at least as to the defendant banks, to act upon the " identification signature " is not a matter of inference from the form of the check. It is expressed in letters and circulars, sent to the defendant banks, and its extent is defined by the same letters and circulars. When the city devised this form of check it prepared a circular to be distributed to each employee with his check. In a letter addressed to all its depositary banks, including all the defendant banks in this case, the city enclosed a copy of this circular and stated: " The Comptroller has received from the President of your institution his assent to a plan recently devised by this department for making pay checks of the City of New York as good as currency. The plan includes the use of a self-identifying check which does away entirely with the necessity for a certificate of identification as submitted to you last month * * *. The circular which I am enclosing describes the way employees make out checks so as to make the signatures, in effect, certified by the city." The circular, enclosed in the letter, stated, amongst other things: " Pay checks of the City of New York should be good for their face value anywhere. City employees ought not to be obliged to pay discounts to storekeepers or others for having checks cashed, nor should they have

trouble getting them honored at any city depositary. The new style of pay check, the use of which is being extended to all departments as rapidly as possible, can be cashed at more than 135 banks in the five Boroughs, and undoubtedly will be accepted at full value by many hundreds of merchants.  *  *  *  The new check is so designed as to be self-identifying.  In the lower left hand corner is a space left for a specimen signature. Each employee must sign his name in that space as a condition of the delivery to him of the check.  The check should be signed before the receipt is signed on the payroll.  Under this plan your signature on the face of the check makes your identification automatic through your second signature when you endorse it on the back for payment.  When you take the check to the bank for payment you should endorse it in the presence of the paying officer unless the bank waives this obligation."

The " assent " by the depositary banks to this plan might well, I think, be regarded as establishing a contract between all such banks and the city of New York that in consideration of such assent the city would, on its part, agree that as a condition of the delivery to an employee of any check, the employee must sign his name in the space left for a specimen signature " so as to make the signatures, in effect, certified by the city."  We need not, however, decide such question for, at least, the circular shows a representation by the city that the " specimen signatures " will be, in fact, the signatures of the payees and it shows, further, an intent that not only the depositary banks, but " hundreds of merchants " should rely on that representation and accept the checks at their full value without requiring any discount.  By reason of the failure of the city's employees to carry out the city's promissory representation, the city has made it possible for a dishonest employee to appropriate to his own use pay checks to which he was not entitled and to obtain payment of such pay checks.  The loss must

fall upon some person and that loss should not, on well-established principles of estoppel, be shifted by the city to the shoulders of any party which has acted to its detriment on the representation of the city that the " specimen signature " is the signature of the employee to whose order the check is made out. It is said that this rule does not apply here for two reasons: (1) That the evidence shows that none of the parties to this action, either the payee bank or the banks to which the drawee bank made payment, accepted the checks on the faith of the " specimen signatures " and (2) that the effect of the statement in the circular that " When you take the check to the bank for payment you should endorse it in the presence of the paying officer unless the bank waives this obligation " made indorsement in the presence of a paying officer of a bank obligatory as part of the identification. It seems to me that neither of these reasons present any basis for the denial of the right of a party to assert an estoppel against the city.

As I have pointed out, any party, including a depositary bank under a contractual obligation to the depositor to pay a check when indorsed by the party who has inserted the identification signature in the blank left for that purpose, might still, for his own protection, require that the indorsement be made in its presence. To give that provision a construction that made exercise of this right obligatory on any person relying on the specimen signature, we must, I think, distort the plain meaning of the circular and letter. The obligation referred to is evidently the obligation of a payee who demands payment at a depositary bank and, by the terms of the circular itself, may be waived even by such bank. It could have no application to the " hundreds of merchants " who were expected to accept the checks in reliance on the " specimen signatures " at their full value. To them the city had extended an unqualified invitation to rely on the specimen signature. It could have no application to a bank which

thereafter received the checks from such merchants. The very purpose of the plan would be destroyed, at least in part, if a depositary bank refused to pay to a merchant who had become a holder of the check unless the merchant produced the indorser to make the indorsement in the presence of the paying officer of the bank.

Nor do I find more substance in the contention that there can be no estoppel as against any party who did not compare the indorsement with the specimen signature and, therefore, did not rely upon the specimen signature. Certainly no such contention could be validly made if after the indorsement by the payee, any intermediate indorser did make such comparison and did rely upon it. By such reliance such an intermediate indorser would obtain title by estoppel to the check. He would be a holder in due course and any subsequent holder who " derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." (Neg. Inst. Law, § 97.) An intermediate indorser, when sued upon his indorsement, could defend on that ground. Otherwise, again the purpose of the plan would be, in part, defeated. True, in this case there were no intermediate indorsers who were themselves holders in due course. The paying bank relied on the indorsement of the other banks and those banks, in turn, relied upon indorsements of parties to the forgery. None of the defendants, however, had knowledge or notice of the forgery. They were imposed upon by the wrongdoers. If the city had carried out its representation or assurance that the employee to whose order the check was made would place his signature in the blank left for a specimen signature, then the forgers could not have perpetrated their crime and no one would have suffered a loss. Thus, the failure of the city to do the very thing which it had said it would do was the direct cause of the loss which some party must bear.

The form of check devised by the city was intended to convey assurance that the specimen signature was the signature of the payee, to all parties who dealt with the apparent holder. To all such parties the city owed a duty to see that the assurance did not fail. That assurance could not fail except through the crime or negligence of the city's own agents, intrusted by the city with the duty of seeing that the city's assurance would not fail. Because the city did give that assurance and its agents failed in that duty, persons acquired possession of the checks, which after insertion of the specimen signature, clothed them with the appearance of being holders in due course. The fact that those who dealt with the apparent holders relied rather on the guaranty of the wrongdoers than on the appearance of the checks is immaterial where it is shown that the wrongdoers would not have been able to give such guaranty or obtain its acceptance unless they had possessed an instrument to which apparently they could transfer a good title. Though the Bronx County Trust Company, in paying the checks to the indorsing banks, relied upon their indorsements, none the less it would have been justified in paying the checks upon a comparison of the specimen signature with the signature on the back of the checks. Upon such payment the plaintiff would have been estopped from claiming that the checks were forged. So, in this case, even though the indorsing banks relied upon the prior indorsements of the wrongdoers, they would have been justified in paying the checks to the wrongdoers by the appearance of the checks and then would have become holders in due course with the right to transfer their title to any person not a party to the wrong. A holding that the banks acquired, through reliance upon prior indorsements, less rights than they would have acquired if they had acted solely upon the appearance of the checks would create an intolerable confusion in the law of negotiable instruments. Both the Bronx County Trust Company

and the indorsing banks acquired title to the instrument from parties who had apparent title to the instrument or who had been clothed by the city with apparent authority to transfer good title. That apparent title or the apparent authority was conferred by the instrument itself and appeared on the face of the instrument. The defendants dealing with such parties had no notice, actual or constructive, of any defect in the title of prior parties. The right of a purchaser for value of a negotiable instrument must be determined from the instrument itself unless there is notice of defect in the instrument or in the title of a prior holder. Here, concededly, there was none.

We have said that " if the negligence of the depositor is the cause of the payment by the bank of a forged check he may not set up the invalidity of the paper which he has induced the bank to act on as genuine. This principle rests primarily on the doctrine of estoppel." (*Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58, 63; Cf. *National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247.) In such case, too, the bank almost invariably has acted in reliance primarily upon a prior indorsement, but where the negligence of the depositor gave appearance of validity it has never been suggested that the bank paying the forged check has not been induced by the negligence of the depositor to act on the check as genuine. The bank relies upon the prior indorsement but only upon the assumption that such indorser has good title to the instrument and all the rights conferred upon a holder by the instrument itself and it acquires those rights — neither more nor less.

Though the defendants relied upon the representation or guaranty of their intermediate indorsers that prior indorsements were valid, it was the fault of the city that made the representation or guaranty of the prior indorsers possible. If the city had, in terms, certified the specimen signature of the payee, it could not have escaped the

obligation to make that certification good by any claim that the check was paid not in reliance of the certification, but in reliance on a subsequent indorsement. It gave written assurance to the defendants that " The circular * * * describes the way employees make out checks so as to make the signatures, in effect, certified by the city." That is the way in which any business man would interpret the circular, and the city, in good faith and fairness, should be held to such interpretation.

The judgment of the Appellate Division and that of the Special Term should be reversed so far as appealed from and judgment entered in favor of the defendant-appellants.

POUND, Ch. J., CRANE, O'BRIEN and HUBBS, JJ., concur with CROUCH, J.; LEHMAN, J., dissents in opinion in which KELLOGG, J., concurs.

Judgment affirmed. (See 261 N. Y. 622.)