## CROWN ZELLERBACH CORPORATION, Plaintiff,

v.

**Sir James GOLDSMITH, CZC Acquisition Corp., GOSL Acquisition Corp., General Oriental Securities Limited Partnership, General Oriental Securities Limited, General Oriental Investments Limited, Compania Financiers Lido, Enderbury Financial, Inc., the Brunneria Foundation, Oriental and American Investments Limited, and O & A Limited, Defendants.**

No. 85 Civ. 2866 (GLG).

United States District Court, S.D. New York.

May 14, 1985.

4. For a similar factual situation, *see Patin v. Sioux City & New Orleans Barge Lines,* 253 F.Supp. 984 (W.D.La.1966).

Sullivan & Cromwell, New York City (William R. Norfolk, of counsel), for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City (George A. Zimmerman, of counsel), for defendants.

CANNELLA, District Judge:

Plaintiff's application for an order enjoining defendants from purchasing any additional shares of Crown Zellerbach Corporation ["Crown"] is denied.

## FACTS

The Court, sitting as the Part One Judge, heard oral argument this afternoon from both sides and has carefully considered the brief and affidavit submitted this morning from plaintiff. Defendants are engaged in a well-publicized hostile takeover bid for Crown. Defendants' original tender offer was withdrawn on April 26, 1985 following Crown's announcement of a proposed spinoff of certain divisions on the preceding day. The tender offer withdrawal was tempered with the caveat that defendants retain the options to buy more Crown shares on the open market or in private transactions, to make another bid for the company or to seek control of Crown through other acquisition tactics.

On July 19, 1984, three months prior to defendants' initial purchases of Crown on the open market, Crown's board of directors announced the distribution of certain common stock rights. These rights, described as a "poison pill" by defendants, effectively preclude Crown from merging with a third party and engaging in certain other transactions. The rights entitle holders to purchase shares of stock in an acquiring company at a highly deflated price. Crown's board of directors retained the power to redeem the rights for fifty cents each, unless a potential purchaser acquires beneficial ownership of 20% of Crown's outstanding shares or makes an offer for 30% of the stock. When defendants withdrew their initial tender offer, they had acquired approximately 9.3% of Crown's common shares. On May 7 and 8, 1985, defendants acquired an additional 2.8 million shares in privately negotiated purchases, increasing the aggregate holdings of defendant's group to approximately 19.88% of Crown's outstanding shares.

Defendants have threatened to trigger the poison pill rights by increasing their beneficial ownership to more than 20%. Defendants have offered a one day moratorium until today at 3:00 p.m. on the purchase of additional shares in order to give the Crown board a "final opportunity" to redeem the stock purchase rights. This high stakes game of "chicken" has been covered in depth by the financial media. *See, e.g., Bid for Crown Zellerbach is Intensified,* Wall St. J., May 14, 1985, at 1, col. 2; 4, col. 2.

Two lawsuits have been filed concerning this action—one in Nevada federal court and the other in the Southern District of New York. Last week, the Nevada court transferred the remainder of its action here.

## DISCUSSION

To obtain injunctive relief plaintiff must establish irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in its favor. *See 754 Orange Ave., Inc. v. City of West Haven, Connecticut,* 761 F.2d 105, 110 & n. 2 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Plaintiff argues· that it will be irreparably harmed if the Court does not enjoin defendants' purchase of additional shares. To establish irreparable harm plaintiff must show the absence of an adequate remedy at law. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir.1981). As defendants correctly observe, however, the Court has the power to rescind the purchases or grant other necessary relief if defendants' purchases are ultimately found to be in violation of the securities laws. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); *Pantry Pride, Inc. v. Rooney,* 598 F.Supp. 891, 899 (S.D.N.Y.1984).

Plaintiff has also failed to satisfy the other requirements necessary to obtain injunctive relief. On May 9, 1985, Judge Thompson of the United States District Court for the District of Nevada granted a motion to transfer his case to this district. At the same time, he denied Crown's application for a temporary restraining order requiring defendants to give Crown 48 hours' notice before making any additional purchases of Crown stock. The Court was aware of defendants' purchases of May 7 and 8, 1985, but ruled that the Williams Act did not prohibit such purchases. In federal court, a judicial determination at one stage of a proceeding becomes the "law of the case" to be followed in successive stages of the same litigation. The law of the case doctrine ensures the orderly progress of court proceedings. Because this motion was brought on ex parte, with notice to defendants only a few hours before a hearing and with extreme time pressure placed on the Court to issue its decision before 3:00 p.m., the Court believes the more prudent course is to refrain from altering the status quo at this time.

Although the Court is sympathetic to plaintiff's arguments that defendants' actions constitute an "end run" around the Williams Act, the instant facts are relatively unique and the law is unsettled. *Compare Kennecott Copper Corp. v. Curtiss-Wright Corp.,* 449 F.Supp. 951 (S.D.N.Y.) (substantial percentage of shares acquired on the open market do not constitute a tender offer), *aff'd,* 584 F.2d 1195 (2d Cir. 1978) *and Brascan Ltd. v. Edper Equities Ltd.,* 477 F.Supp. 773 (S.D.N.Y.1979) (same result with private solicitations) *with S-G Securities, Inc. v. Fuqua Investment Co.,* 466 F.Supp. 1114 (D.Mass.1978) (publicly announced intention to acquire a controlling stock of a target company plus subsequent rapid acquisition of large blocks of stock through open market constitute a tender offer for purposes of 15 U.S.C. § 78n(d), Section 14(d) of the Securities Exchange Act) *and* SEC "eight-prong test" (relatively liberal view of what constitutes a tender offer). ·

## CONCLUSION

Plaintiff's motion for injunctive relief is denied. .

The parties are directed to appear before Judge Gerard L. Goettel for further proceedings in this action at 11:00 a.m. on May 17, 1985 in Courtroom 444.

SO ORDERED.