**SIDERPALI, S.P.A. and Conipost Postes Metalicos E Acessorios Ltda.,**
**Plaintiffs,**

v.

**JUDAL INDUSTRIES, INC., Alan Schreer and Netumar Lines, Defendants.**

No. 89 Civ. 7292 (SWK).

United States District Court,
S.D. New York.

Sept. 29, 1993.

fraud claims. Plaintiffs also move for summary judgment dismissing Judal's remaining counterclaims. Defendant Netumar Lines ("Netumar") moves for summary judgment dismissing Judal's cross-claims against it and for sanctions. Finally, Judal cross-moves for partial summary judgment against Netumar and for sanctions.

Soller, Shayne & Horn by Paulsen K. Vandevert, New York City, for plaintiffs.

Field, Lomenzo, Turret & Blumberg, P.C. by David A. Field, New York City, for defendants Judal Industries, Inc. and Alan Schreer.

Dougherty, Ryan, Mahoney, Pellegrino, Guiffra & Zambito by Vincent J. Barra, New York City, for defendant Netumar Lines.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action arises out of a contractual relationship between Conipost Postes Metalicos E Acessorios Ltda. ("Conipost") and Judal Industries, Inc. ("Judal"), whereby Conipost agreed to produce and sell to Judal steel shafts for use as light poles. In an order dated September 4, 1992, this Court granted plaintiffs partial summary judgment against Judal for breach of contract and conversion, and held that plaintiffs may recover the sum of $80,000.00 pursuant to either (but not both) of these claims. Plaintiffs now move for an order directing entry of partial judgment in their favor in the sum of $80,000.00, and for sanctions against Judal. Defendants Judal and Alan Schreer ("Schreer") (collectively, the "Judal Defendants") move to dismiss plaintiffs' causes of action sounding in fraud (the first and fourth counts of the Amended Complaint). Plaintiffs cross-move for sanctions and request that summary judgment be granted in their favor on the

### BACKGROUND [1]

Conipost is a manufacturer of metal products, including steel shafts for use as posts in street and highway lighting. Plaintiff Siderpali, S.P.A. ("Siderpali") is an Italian corporation that owns Conipost and served as Conipost's financier during the relevant time period. Judal is a manufacturer, vendor and distributor of street lighting equipment and accessories. Judal Sales Corp. ("Judal Sales") is a New York corporation that functions as the sales and negotiator of contracts for Judal. Defendant Schreer is president and part owner of Judal. Defendant Netumar is an ocean common carrier that transports cargo between ports in Brazil and the United States.

In May, 1989, Judal and Conipost entered into a contract whereby Conipost agreed to produce and sell to Judal steel shafts for use as light poles. Judal, in turn, entered into a contract to supply the light poles to the City of New York. Pursuant to the contract between Conipost and Judal, the purchase price of the poles was $169,504.00. Of that amount, Judal paid $70,000.00 in cash to a New York bank prior to delivery. The balance, $99,504.00, was to be paid by letter of credit obtained at Sunkyong Bank by Judal ("Letter of Credit") for the benefit of Conipost. In addition, as security for Judal's cash payment, plaintiff Siderpali agreed to post a standby letter of credit ("Standby Letter"), issued by Banca Commerciale in Bologna, Italy, in the amount of $80,000.00. The Standby Letter stated that the sum of

---

[1]. The following undisputed facts have been taken from the Amended Complaint, Judal and Schreer's Answer To Amended Complaint and Cross-claim, the Reports and Recommendations of Magistrate Judge Nina Gershon, dated December 18, 1991 (as corrected on January 13, 1992) and July 30, 1992 ("RRI" and "RRII" respectively), Plaintiffs' Statement of Undisputed Facts Pursuant To Local Civil Rule 3(g), dated December 18, 1992 ("Plaintiffs' Rule 3(g) Statement"), the Judal Defendants' Statement of Disputed Facts Pursuant To Local Civil Rule 3(g), dated January 7, 1993 ("Defendants' Rule 3(g) Statement"), and Netumar's Local Rule 3(g) Statement ("Netumar's Rule 3(g) Statement").

$80,000.00 would be available to Judal upon presentation of "[a] statement duly signed by an authorized officer of your company ... certifying that Conipost Ltda ... has failed to deliver to yourselves within September 15, 1989" the light poles.

On September 7, 1989, Schreer made a demand on the Standby Letter. In his demand letter, Schreer stated:

> The terms of the credit call for a statement from an authorized officer of Judal to certify that Conipost ... has failed to deliver the goods, encompassed within the credit, within the September 15, 1989 final date.
>
> I therefore state that the goods ... have not been delivered.

In reliance upon Schreer's letter, Banca Commerciale made a payment on the Standby Letter to Judal in the amount of $80,000.00.

On September 13, 1989, Conipost placed the goods in the possession of Netumar in Santos, Brazil. Soon thereafter, Netumar issued a negotiable order bill of lading ("Bill of Lading") to Judal, which on its face entitled Judal to take possession of the six containers of light poles. Conipost was subsequently paid on the Letter of Credit in the amount of $99,500.00. The goods arrived at the New York port in and around October 27, 1989.

On October 30, 1989, Judal claims that its agent engaged trucks and drivers to pick up the containers, and hired cranes and operators to unload the cargo at its warehouse. Affidavit of Alan Schreer, sworn to on June 27, 1990 ("Schreer Aff."), ¶ 3. Despite Judal's presentation of the Bill of Lading, however, Netumar refused to release the cargo, claiming that it had been notified by Conipost that a fraud had been committed by Judal, and that the cargo should therefore be delivered to Conipost instead. Judal contends that, thereafter, on November 1, 1989,

Netumar allowed Judal to pick up only one container. Affidavit of Karen M. Kim, sworn to on June 27, 1990 ("Kim Aff."), ¶ 4.

This action commenced in and around November 1, 1989, when plaintiffs brought an order to show cause seeking a temporary restraining order preventing Netumar from delivering the containers of cargo to Judal. The Court denied plaintiffs' motion for a temporary restraining order, and thereafter, on November 8 and 9, 1989, Netumar released the remaining containers to Judal.

In its Amended Complaint, plaintiffs allege four causes of action against the Judal Defendants.[2] The first and fourth causes of action allege fraud against Judal and Schreer respectively, in calling upon the Standby Letter. The second and third causes of action allege conversion and breach of contract against Judal. By Order dated September 4, 1992 (the "September Order"), this Court accepted Magistrate Judge Gershon's Reports and Recommendations[3] granting summary judgment to plaintiffs on their breach of contract and conversion claims (counts two and three of the Amended Complaint). The Court also adopted that portion of the Magistrate Judge's report (1) dismissing the complaint against Judal Sales Corp.; (2) denying Schreer's motion to dismiss the fourth cause of action on the ground that he was protected by the corporate shield doctrine; and (3) denying Judal's motion to dismiss the fraud claim against it.

The Judal Defendants answered the amended complaint on January 4, 1990, and Judal asserted three counterclaims against plaintiffs. The first counterclaim alleges that Conipost breached its contract with Judal by (1) failing to pack the steel shafts in accordance with New York City Department of Transportation ("D.O.T.") specifications; (2) failing to place metal manufacturer labels on the light poles; and (3) improperly spacing

---

**2.** Plaintiffs also allege four causes of action against defendant Netumar. However, on or about January 22, 1990, plaintiffs proposed an agreement to dismiss defendant Netumar from the action at bar. *See* Netumar's Rule 3(g) State-

ment, ¶ 10. This agreement appears to remain pending between the parties.

**3.** This case was referred to Magistrate Judge Gershon for general pretrial on April 5, 1990,

drill holes.[4] The second and third counter-claims allege that Conipost's breach caused Judal loss of business and business reputation, and that Conipost's attempt to have Netumar withhold delivery of the light poles caused Judal damages. The second counterclaim was dismissed by order dated May 17, 1991.

In its answer, Judal also asserts one cross-claim against defendant Netumar. This cross-claim alleges that Netumar's refusal to release the goods to Judal on October 30, 1989 was improper and illegal, causing Judal damages in the sum of $10,324.00 for the payments Judal was required to make for trucks, cranes, operators and demurrage charges.

Defendants Judal and Schreer now move to dismiss plaintiffs' first and fourth causes of action. In response, plaintiffs: (1) cross-move for sanctions; (2) request summary judgment on the first and fourth causes of action; and (3) cross-move for summary judgment dismissing Judal's remaining counterclaims. Plaintiffs also move for an order directing the entry of partial judgment on their breach of contract and conversion claims in the amount of $80,000.00, and for sanctions. Defendant Netumar moves for summary judgment dismissing Judal's cross-claim and for sanctions, and Judal cross-moves for summary judgment and for sanctions against Netumar. The Court will consider each of these motions in turn.

## Discussion

### I. The Fraud Causes of Action

The Judal Defendants move, pursuant to Federal Rule of Civil Procedure 12(c), to dismiss plaintiffs' first and fourth causes of action on the ground that the fraud alleged in the Amended Complaint arises out of the same facts for which plaintiffs have already obtained judgment for breach of contract. Alternatively, Judal and Schreer argue that plaintiffs have elected their remedies in pro-ceeding to judgment on the third cause of action, thereby barring judgment on the first and fourth causes of action. Plaintiffs oppose this motion and cross-move for sanctions on the ground that this Court, by Order dated September 4, 1992, previously had denied the Judal Defendants' motion to dismiss the fraud claims for the precise reasons reargued by Judal herein. Plaintiffs also request summary judgment on their fraud claims. For the reasons set forth below, the Court denies defendants' motion to dismiss, grants plaintiffs' motion for sanctions, and denies plaintiffs' request for summary judgment.

### A. The Judal Defendants' Motion To Dismiss

The Court is free to modify its own pretrial rulings at any time prior to entering final judgment. *Wilder v. Bernstein,* 645 F.Supp. 1292, 1310 (S.D.N.Y.1986), *aff'd,* 848 F.2d 1338 (2d Cir.1988). However, the "law of the case" doctrine counsels against re-opening issues previously decided absent compelling circumstances, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.* Thus, a judicial determination at one stage of a proceeding becomes the "law of the case" to be followed in successive stages of the same litigation, ensuring "the orderly progress of court proceedings." *Crown Zellerbach Corp. v. Goldsmith,* 609 F.Supp. 187, 189 (S.D.N.Y.1985). As the Second Circuit has indicated, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir.1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

Judal and Schreer seek to dismiss the fraud claims against them on the ground that, under New York law, a fraud claim

and for substantive motions on June 19, 1990 and May 23, 1991.

**4.** Defendants Judal and Schreer also claim that plaintiff breached the contract by failing to supply stainless steel metal inserts in the screw holes of the plates attached to the poles. Defendants'

Judal Industries, Inc. and Alan Schreer's Reply Memorandum of Law, dated January 7, 1993, at 7. However, this claim will not be considered by the Court as the defendants' Answer To Amended Complaint and Cross-claim fails to allege plaintiffs' failure to supply metal inserts.

must be dismissed where the only fraud charged relates to a breach of contract. However, the Judal Defendants' present motion merely restates their previous January 20, 1992 motion to dismiss, which was addressed and disposed of by Magistrate Judge Gershon in RRII, and this Court's subsequent September Order adopting her report. In RRII, Judge Gershon denied Judal's motion to dismiss the fraud cause of action against it, finding that plaintiffs' claim that Judal fraudulently sought and obtained payment under the Standby Letter "does not merely restate the breach of contract claim" as Judal contended. RRII at 9. The Magistrate Judge further stated that

> even if Judal Industries, Inc. had no contractual obligation to act in accordance with the parties' agreement, its act in making allegedly false statements to the bank to obtain plaintiffs' money would be actionable in tort. In contrast, in *Edwil*, upon which defendant relies, there was no obligation of truthfulness absent the contract.

RRII at 10. The Court sees no reason to disturb the Magistrate Judge's ruling, which was adopted by the Court on September 4, 1992, as Judal and Schreer fail to cite either new grounds or new law in their support.[5]

Moreover, although defendant Schreer did not previously assert a motion to dismiss the fraud count on the grounds raised by Judal, the Court finds that the Magistrate Judge's reason for rejecting Judal's argument applies equally well to Schreer. The Judal Defendants' fraudulent conduct created actionable causes of action separate and apart from plaintiffs' claim against Judal for breach of contract. Accordingly, the Judal Defendants' motion to dismiss the first and fourth causes of action on the ground that the fraud charged relates to a breach of contract is denied.

 Judal and Schreer next move to dismiss the fraud counts on the ground that the

plaintiffs have elected their remedies by obtaining judgment for breach of contract and conversion. Magistrate Judge Gershon previously addressed a similar contention, namely, whether plaintiffs could seek recovery for both breach of contract and conversion. *See* RRII at 7–8. Judge Gershon found that, although plaintiffs had been granted summary judgment on the breach of contract claim, this did not warrant dismissal of their conversion claim. *Id.* As the Magistrate Judge noted, "[t]hat plaintiffs joined different theories of recovery relating to the same injury does not present an election of remedies problem." *Id.*

Similarly, plaintiffs are free to pursue their fraud causes of action despite the fact that they have already been granted summary judgment for breach of contract and conversion. However, should plaintiffs successfully prove fraud against the defendants, they will be limited to one recovery, as they may not recover for the same wrong twice. *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir.1988). Nonetheless, if plaintiffs succeed on the fourth cause of action, Schreer will be found jointly and severally liable for the $80,000.00 judgment, thus affording plaintiffs an opportunity to obtain recovery from an additional party. Moreover, should defendant Judal be found liable for fraud, plaintiffs may recover an additional $240,-000.00 in punitive and exemplary damages. Accordingly, the Judal Defendants' motion to dismiss the first and fourth causes of action is denied.

## B. Plaintiffs' Motion For Sanctions

 Plaintiffs move for sanctions, pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, arguing that the Judal Defendants' motion to dismiss the first and fourth causes of action is a mere repetition of their January 20, 1992 motion to dismiss the same counts, which was denied by Magis-

---

**5.** Although the Judal Defendants concede that the theories pursuant to which they are now seeking dismissal were briefed before Judge Gershon in connection with their January 20, 1992 motion, Judal and Schreer contend that, at the suggestion of the Magistrate Judge, their January 20, 1992 motion had been withdrawn without prejudice and deferred until judgment had been

ordered by the Court on plaintiffs' third cause of action for breach of contract. However, not only do the Judal Defendants fail to cite to any order setting forth the Magistrate Judge's request that they defer their current motion, RRII clearly sets forth the Magistrate Judge's ruling, substantively addressing these issues. The defendants thus misrepresent prior proceedings before the Court.

trate Judge Gershon's RRII and this Court's September Order. The Court agrees that sanctions should be imposed in this instance.

The purpose of Rule 11 is to streamline litigation in the federal courts by thwarting the use of frivolous and abusive trial tactics. *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21–22 (2d Cir.1990). The Second Circuit has held that:

> Sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

Similarly, section 1927 of the United States Code provides that:

> Any attorney or other person ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Thus, a court is "empowered to hold an attorney who 'multiplies the proceedings in any case unreasonably and vexatiously' personally liable for excess costs, expenses, and attorney's fees incurred as a result of his or her improper conduct." *Mone v. Commissioner*, 774 F.2d 570, 574 (2d Cir.1985).

In *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1254 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992), a case cited by plaintiffs, the district court imposed sanctions on a defendant who re-submitted a motion that had been previously denied. The district court held that the filing of the motion "was not justified by existing law or by a good faith argument for extension, modification or reversal of existing law." *Id.* Although the Second Circuit reversed the district court's ruling on the underlying motion, the court upheld the district court's imposition of sanctions. According to the Second Circuit, "we cannot say that the court abused its discretion in finding that the NMB's position in making its motion was not justified." *Id.* at 1255.

Defendants Judal and Schreer and their counsel have failed to present any new legal arguments in support of their motion to dismiss the fraud claims. The Judal Defendants also have not provided the Court with any reasons as to why the September Order should be overturned, or as to why the Order's findings should not continue to apply. In fact, Judal and Scheer fail to even acknowledge that the September Order addresses their contentions.[6] Under such circumstances, the imposition of sanctions is warranted. Accordingly, defendants Judal and Schreer and their counsel are directed to pay to plaintiffs all reasonable costs, expenses and attorneys' fees incurred in opposing the Judal Defendants' motion to dismiss plaintiffs' fraud causes of action.

**C. Plaintiffs' Motion For Summary Judgment**

■ Although plaintiffs have not formally moved for summary judgment on the first and fourth causes of action, they now request summary judgment in their Reply Brief In Support Of Cross–Motions For Sanctions and For Summary Judgment ("Pl. Reply"), in light of the "Judal defendants' admission of fraud." Pl. Reply at 1. In support of their

---

**6.** Although the Court acknowledges that defendant Schreer's previous motion to dismiss the fraud claim was based on a different theory of law, and that the Court's September 4, 1992 ruling on the election of remedies issue addressed election between breach of contract and conversion, rather than fraud, the Court still finds that sanctions are warranted in this instance. Judal's prior motion to dismiss the fraud claims, based on the same theories of law presented here, was denied on September 4, 1992. *See* RRII at 8–10. Similarly, Judal's prior motion to dismiss the conversion claim on the grounds of election of remedies was denied for the same reasons cited here. RRII at 7–8. As the Judal Defendants are represented by the same counsel, they cannot argue that they had no notice that the Court had already disposed of the arguments addressed herein.

contention, plaintiffs argue that Judal and Schreer presented materials beyond the scope of the pleadings, and that, therefore, the defendants' motion to dismiss the fraud claims, pursuant to Federal Rule of Civil Procedure 12(c), should be treated as one for summary judgment, pursuant to Rule 56(c). Plaintiffs further argue that, since the Court "already is engaged in determining whether a genuine issue of material fact exists," *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1225 (S.D.N.Y. 1989), it may grant the plaintiffs summary judgment *sua sponte.* The Court disagrees.

Rule 12(c) provides that:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and are not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

However, a motion for dismissal of the complaint for insufficiency on its face should not be treated as a motion for summary judgment, particularly if the parties are not given a full opportunity to present all pertinent material beyond the scope of the pleadings. *Lowenschuss v. Kane*, 520 F.2d 255, 261–62 (2d Cir.1975).

In this case, the Judal Defendants' motion to dismiss was based on two distinct legal theories: (1) that a cause of action for fraud can not lie where the allegedly fraudulent activities arise out of the same activities from which plaintiffs may recover under a claim for breach of contract; and (2) that the fraud claims are precluded under the doctrine of election of remedies. Judal and Schreer did not present any materials outside the scope of the pleadings in support of their motion, and the Court has not considered any such materials in rendering its decision. Thus, as the Court is simply not engaged in determining whether any genuine issue of material fact exists here, Rule 12(c) does not apply, and the Judal Defendants' motion to dismiss

cannot be converted into one for summary judgment.

 Nevertheless, a court may render summary judgment in favor of the non-moving party, even though no formal cross-motion has been made under Federal Rule of Civil Procedure 56. *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. at 1225. "However, care must be used to ensure that the moving party had an adequate opportunity to establish a genuine issue of fact that the opponent is not entitled to judgment as a matter of law." *Id.* A *sua sponte* grant of summary judgment should be avoided. *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 154 (3d Cir.1985).

 In this case, plaintiffs request summary judgment on their fraud claims without providing their adversaries with a reasonable opportunity to submit opposing affidavits setting forth any genuine issues of material facts. *See Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687 (2d Cir.1990) (finding that district court's *sua sponte* conversion of a motion to dismiss into a motion for summary judgment was improper as it took plaintiff by surprise and deprived her of a reasonable opportunity to meet facts outside the pleadings). Moreover, plaintiffs have not abided by this Court's local rules requiring them to set forth grounds in support of their summary judgment motion at a pre-motion conference before submitting any papers. Accordingly, plaintiffs' request for summary judgment is denied without prejudice to serve a proper motion for summary judgment on this issue.[7]

## II. Plaintiffs' Motion For Summary Judgment Dismissing the Judal Defendants' Counterclaims

Plaintiffs move, pursuant to Federal Rule of Civil Procedure 56(c), for summary judgment dismissing Judal's first and third counterclaims on the grounds that there are sufficient undisputed facts to overcome Judal's allegations of breach of contract, and that Judal has failed to present sufficient evidence to justify allowing these claims to survive.

---

**7.** Because the Court finds that plaintiffs' request for summary judgment is improper in form, the Court need not consider the merits of plaintiffs' submission.

Judal contends that the existence of genuine issues of fact warrant a trial on the counterclaims. For the reasons that follow, plaintiffs' motion is denied.

## A. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The non-moving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York,* 762 F.2d at 249; *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the non-moving party's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S.*

*Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the non-moving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the non-movant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 11–12.

Once the non-moving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. at 330, n. 2, 106 S.Ct. at 330, n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

## B. Judal's First Counterclaim

Judal's first counterclaim has been broken down into three separate issues, namely, whether Conipost: (1) improperly packed and loaded the light poles; (2) failed to label the poles; and (3) improperly spaced the drill holes on the light poles. The Court will consider each issue in turn.

### 1. Packing and Loading of the Light Poles

Paragraphs 36(a) and 39 of Judal's first counterclaim allege that Conipost breached its contract with Judal by improperly packing and loading the light poles into six open top containers. Conipost contends that Judal issued three sets of packing instructions to Conipost: (1) the light poles were to be packed according to D.O.T. specifications; (2) the Letter of Credit required the light poles to be loaded in open top containers; (3) the light poles were to be packed according to written instructions and a diagram that Judal sent to Conipost. Plaintiffs' Rule 3(g) Statement, ¶ 1. According to Conipost, Judal's packing instructions and the D.O.T. specifications were contradictory in that they would have resulted in different packing configurations. *Id.,* ¶ 2. Conipost further contends that loading the poles into open top containers was mandatory pursuant to the Letter of Credit, and that, if Conipost followed Judal's written instructions, the packs either would not have fit into or been removable from the open top containers. *Id.,* ¶¶ 3–4. Thus, Conipost asserts that it was forced to use a commercially reasonable substitute method of packing, which differed from Judal's written instructions.

Judal contends that Conipost was required to pack the poles in accordance with D.O.T. specifications. Defendants' Rule 3(g) Statement, ¶ 3. Judal further claims that the Letter of Credit, D.O.T. specifications and written instructions were not at variance with each other. *Id.,* ¶ 1. In fact, Judal asserts that the only reason Conipost packed the poles the way it did was to reduce the number of containers, thereby saving itself money.

As is clear from the preceding discussion, several genuine material issues of fact exist which preclude granting plaintiffs' summary judgment. These factual issues include whether (1) Conipost was required to abide by D.O.T. specifications; (2) Judal issued conflicting instructions; (3) any one set of packing instructions preempted the others; (4) Conipost could have packed the poles pursuant to D.O.T. specifications; and (5) it was commercially practicable to pack the poles pursuant to D.O.T. specifications. Accordingly, plaintiffs' motion for summary judgment dismissing that part of the first counterclaim concerning the packing and loading of the light poles is denied.

### 2. Labeling of the Light Poles

Paragraphs 36(b) and 38 of the first counterclaim allege that Conipost breached its contract with Judal by failing to place a metal label on each pole identifying the manufacturer of the light poles, as required by the City of New York. Conipost contends that it had no obligation to label the poles because it never received any instructions from Judal concerning labeling. Judal contends, however, that Conipost received the proper drawings showing how to label the poles. These contrary contentions clearly create a factual issue precluding summary judgment. Accordingly, plaintiffs' motion seeking summary judgment of that portion of the first counterclaim concerning the labeling of light poles is denied.

### 3. Spacing of the Drill Holes

Paragraphs 36(c) and 39 of the first counterclaim allege that the holes drilled into the light poles for attachment of lamppost arms did not conform to D.O.T. specifications, and that Judal incurred damages in order to bring the poles into compliance. Although Conipost concedes that the armhole spacing in the light poles at issue did not conform to D.O.T. specifications, *see* Pl. Brief at 20, Conipost argues that New York City accepted the armhole spacing, and that, therefore, Judal did not incur damages in bringing the light poles into compliance. Judal contends that, in order to convince the City of New York to accept the light poles with the deficient spacing, it was required to manually insert threaded screws into approximately 150 to 200 poles to demonstrate that the screw holes could be used. According to Judal, this procedure cost it substantial monies and damages in the form of injury to its reputation.

Thus, a genuine issue of material fact exists as to whether Judal was actually damaged by the defective armhole spacing. Accordingly, plaintiffs' motion for summary

judgment dismissing that portion of Judal's first counterclaim alleging improper armhole spacing is denied.

### C. Judal's Third Counterclaim

 Judal's third counterclaim alleges that Conipost improperly instructed defendant Netumar to refrain from releasing the containers to Judal, thereby causing Judal damages in the sum of $10,324.00 for trucking, cranes, operators and demurrage charges. Conipost argues that, by cross-moving for summary judgment against Netumar, Judal elected its remedies and is therefore barred from recovering on its third counterclaim. Conipost also argues that, by improperly calling on the Standby Letter, Judal, in effect, took back almost half of the purchase price of the light poles. Thus, Conipost contends that it was justified in notifying Netumar to stop delivery. Judal asserts, however, that even if it improperly called upon the Standby Letter, plaintiffs had no legal right to advise Netumar not to deliver the poles as Judal was in possession of the Bill of Lading.

Section 2–705 of the Uniform Commercial Code[8] provides that:

(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2–702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.

(2) As against such buyer the seller may stop delivery until

(d) negotiation to the buyer of any negotiable document of title covering the goods.

As the Court finds that Conipost initially had the right to withhold the goods under section 2–705(1), the pertinent issue is whether Conipost had "negotiated" to Judal "any negotiable document of title covering the goods," *see* N.Y.U.C.C. § 2–705(2)(d), thereby precluding

Conipost from stopping delivery. Negotiation is defined as the "transfer of an instrument in such form that the transferee becomes a holder." N.Y.U.C.C. § 3–202(1).

It is undisputed that, soon after Conipost placed the light poles in the possession of the carrier, Netumar issued the Bill of Lading to Judal, which on its face entitled Judal to take possession of the six containers of light poles. Thus, as the Bill of Lading had already been negotiated to Judal, Conipost was not entitled to stop delivery of the goods. Accordingly, Conipost's motion to dismiss Judal's third counterclaim on the grounds that it was entitled to instruct the carrier not to deliver the light poles to Judal is denied.

 Plaintiffs' motion to dismiss Judal's third counterclaim pursuant to the election of remedies doctrine similarly lacks merit. As set forth in Part I.A., *supra*, it is a general rule that a party must elect between two remedies only when the remedies available to a party are inconsistent or mutually exclusive. *See Rennie v. Rennie*, 261 A.D. 587, 26 N.Y.S.2d 690, 692 (1st Dept.1941), *rev'd on other grounds*, 287 N.Y. 86, 38 N.E.2d 143 (1941). The doctrine has "no application to the pursuit of remedies against parties concurrently liable, short of payment and satisfaction." *City of New York v. Bronx County Trust Co.*, 261 N.Y. 64, 184 N.E. 495, 498 (1933). The rule itself has long been the subject of criticism, and is to be narrowly construed. *Lumber Mut. Casualty Ins. Co. of New York v. Friedman*, 176 Misc. 703, 28 N.Y.S.2d 506, 510 (S.Ct., N.Y.Co. 1941).

The Court finds that Judal has not elected its remedies by moving for summary judgment against Netumar. On the contrary, should both plaintiffs and Netumar be found liable for the damages alleged in Judal's third counterclaim and cross-claim, plaintiffs and Netumar would be jointly and severally liable for the damages incurred. Accordingly, plaintiffs' motion to dismiss Judal's third counterclaim is denied.

---

8. Because the parties appear to agree that New York law controls in this case, the Court will cite

to the Uniform Commercial Code as adopted by New York.

## III. Plaintiffs' Motion For Partial Judgment and Sanctions

 Plaintiffs move for an order, pursuant to Federal Rule of Civil Procedure 54(b), directing the entry of partial judgment against Judal in the amount of $80,000.00, with interest from September 15, 1992, with respect to counts two and three of the Amended Complaint. Plaintiffs also move for the imposition of sanctions.

Rule 54(b) provides that:

When more than one claim for relief is presented in an action, ... the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. ...

Rule 54(b) was enacted to avoid the possible injustice of postponing judgment of a distinctly separate claim until adjudication of the entire case. *Bruce v. Martin*, 702 F.Supp. 66, 69 (S.D.N.Y.1988). It was not designed, however, to overturn the general rule against piecemeal appeals. *Id.; see also Sears, Roebuck and Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956).

The Second Circuit has indicated that entry of final judgment under Rule 54(b) "is not to be done lightly, particularly when the action remains pending as to all parties." *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir.1978). Thus, Rule 54(b) orders " 'should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only in the infrequent harsh case.' " *Gaetano Marzotto & Figli, S.P.A. v. G.A. Vedovi & Co.*, 28 F.R.D. 320, 324 (S.D.N.Y.1961) (quoting *Panichella v. Pennsylvania R.R. Co.*, 252 F.2d 452, 455 (3d Cir.1958)).

 In determining whether to grant partial judgment, a court should consider the relationship between the adjudicated and unadjudicated claims. *Gaetano Marzotto & Figli, S.P.A. v. G.A. Vedovi & Co.*, 28 F.R.D. at 324. Where the claim on which final judgment is sought is " 'inherently inseparable from, or closely related to' the claims still pending, a certification by the district court that there is no just cause for delay and that final judgment should be entered might well be an abuse of discretion." *Id.* Other considerations include whether the judgment will expedite the ultimate disposition of the litigation, and whether delay in the entry of final judgment will be prejudicial to the collection of any monies that will eventually become due. *Id.* at 325.

 While the claims and counterclaims in this action are not "inherently inseparable," they do arise out of the same transaction and are therefore sufficiently related to bar the application of Rule 54(b). Moreover, the Court does not find that the entry of final judgment on a portion of plaintiffs' claims will accelerate the final disposition of the action as a whole. Finally, in light of the lengthy delay already incurred in this case, and the fact that the remaining claims and counterclaims are ripe for trial, the Court finds that delay in the entry of final judgment will not prejudice the plaintiffs. Accordingly, plaintiffs' motion for an order directing the entry of partial judgment in their favor is denied as premature.[9]

## IV. Defendant Netumar's Motion For Summary Judgment and Judal's Cross–Motion For Summary Judgment

### A. Netumar's Motion

Defendant Netumar moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing Judal's cross-claim against it, and for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure. In support of its motion, Netumar argues that Judal was not entitled

---

**9.** Plaintiffs also contend that sanctions should be imposed against the Judal Defendants because the defendants have "persisted in including in their counterclaims for damages sums for" attorneys' fees, penalties, travel expenses and salaries. Plaintiffs' Reply Memorandum Of Law In Support of Plaintiff's Motion For Sanctions at 1. As the parties legitimately dispute the issue of damages, however, Rule 11 sanctions are inappropriate here. Moreover, the Court declines to impose sanctions on defendants as plaintiffs have failed to properly move for them. *See* discussion, *supra* at 11.

to the cargo, and that, therefore, any delay caused by Netumar in delivering the cargo could not have caused Judal injury. Judal cross-moves for summary judgment on its cross-claim, and for sanctions against Netumar.

At the outset, the Court notes that Netumar clearly misinterprets the September Order granting plaintiffs summary judgment on their breach of contract and conversion claims. Although Netumar argues that "the precise issue which was litigated and finally judicially decided by summary judgment in the prior motion by the plaintiffs, was whether Judal was entitled to the six (6) containers of cargo," *see* Affidavit of Vincent J. Barra, sworn to on January 7, 1993 ("Barra Aff."), ¶ 13 (citations omitted), in fact, the Court's September Order did not address that issue. Rather, the Court found Judal liable for converting the proceeds of the Standby Letter.[10] *See* RRII at 11. Thus, the Court found neither that Judal was liable for conversion of the cargo, nor that Judal was not entitled to the cargo. Accordingly, Netumar's claim that any delay in delivery of the cargo could not have caused Judal injury because this Court previously determined that Judal was not entitled to the cargo is a blatant misreading of the Court's September Order. Moreover, Netumar's assertions that the Court's Order collaterally estops Judal from alleging that Netumar is liable for damages, and that the "law of the case" doctrine precludes Judal from "relitigating" this issue is also a misinterpretation of the September Order. Barra Aff. ¶¶ 17–18.

Netumar next argues that the Pomerene Bills of Lading Act, 49 U.S.C. § 90(a), precluded it from delivering the containers to Judal once plaintiff had notified Netumar to withhold delivery. This contention was rejected previously, however, when Magistrate Judge Gershon ruled that "Netumar's reliance on the Pomerene Act is misplaced since the Act does not apply to shipments from a foreign port to a port in the United States."[11] RRIII at 8. Accordingly, Netumar's motion for summary judgment dismissing Judal's cross-claim and for sanctions is denied.

### B. Judal's Cross–Motion

■ Judal cross-moves for summary judgment and for sanctions against Netumar. Judal argues that, since title to the goods passed to it when Judal was provided with the Bill of Lading, Netumar was not justified in refusing to release the containers.[12] This contention was addressed by Judge Gershon in RRIII. The Magistrate Judge held that Judal possessed title to the goods once it was issued the Bill of Lading. RRIII at 9. According to the Magistrate Judge:

> Section 7–104(1)(a) of the Uniform Commercial Code provides that a bill of lading is negotiable "if by its terms the goods are to be delivered to bearer or to the order of a named person." It is not in dispute between Judal and Netumar that what was issued to Judal was a negotiable order bill of lading. Under U.C.C. 7–303(2), the holder of a negotiable bill of lading "can hold the bailee according to the original terms." Unless there are instructions on the negotiable bill of lading that indicate otherwise (and it is undisputed that there

---

**10.** In order to determine whether Judal was liable for breach of contract, the Magistrate Judge considered whether the contract between Judal and Conipost allowed Judal to call on the Standby Letter if the goods had not arrived at the New York dock by September 15, 1989, or whether Judal's right to call on the Standby Letter expired once Conipost had physically presented the goods to Netumar in Brazil before September 15, 1989. Judge Gershon held, and this Court agreed, that the contract was a standard C & F shipment contract and that "delivery" occurred upon the placement of goods in the possession of the carrier in Brazil on September 13, 1989. RRI at 12. However, this decision merely determined Judal's right to call on the Standby Letter, and thus, did not reach the merits of whether

Judal was entitled to the cargo once it reached New York.

**11.** The Magistrate Judge denied Netumar summary judgment dismissing Judal's cross-claim in a Report and Recommendation, dated October 17, 1990 ("RRIII"), which this Court adopted by order dated May 17, 1991. *See* RRIII at 8.

**12.** The Court notes that Judal does not claim that Netumar was not justified in withholding delivery once the plaintiffs commenced this action on November 1, 1989. Rather, Judal's cross-claim is based on Netumar's failure to turn over the goods on October 30, 1989. *See* RRIII at 8.

are none here), the holder of the bill of lading retains title. Thus, the U.C.C., like prior New York law, "permits a change of instructions to be made only by the holder and requires notation of such changes on the bill...."

RRIII at 9.

The Magistrate Judge further held that Netumar had not established that it was presented with conflicting claims entitling it to delay delivery pursuant to U.C.C. § 7–603. RRIII at 9. According to the Magistrate Judge, the mere fact that Netumar had received a telex from Conipost demanding that Netumar refrain from delivering the containers could not be considered an adverse claim justifying delay in the face of Judal's presentation of the Bill of Lading. RRIII at 10. Additionally, the Magistrate Judge stated that

> the law, as set forth above, is clear and unequivocal that Netumar had no right to interfere with delivery to Judal on a mere phone call or telex from plaintiffs or their attorneys to the effect that plaintiffs were now claiming delivery for themselves. U.C.C. § 7–303(2) (allowing the holder of a negotiable bill of lading to 'hold the bailee according to the original terms'; permitting a change of instructions to be made only by the holder; and requiring any such change to be noted on the bill) would be significantly deprived of its intended power to protect holders of negotiable bills of lading if the shipper's communication in this case could be used to defeat for several days the holder's right to delivery.

RRIII at 10–11. Netumar has not refuted this recitation of the law, and has brought forth no genuine issues of material fact precluding summary judgment in Judal's favor. Accordingly, Judal's cross-motion for summary judgment is granted.

■ Judal also moves for sanctions against Netumar for bringing a "frivolous motion which is baseless in fact and in law." [13] As set forth in Part I.B., *supra*, sanctions are imposed where an attorney "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Netumar and its counsel clearly misrepresented the Court's September Order, in which the Court found plaintiffs liable for converting the proceeds of the Standby Letter. In fact, contrary to Netumar's assertion, the Court has never found that Judal was not entitled to the cargo. Moreover, Netumar clearly ignored the effect of this Court's prior holding that the Pomerene Bills of Lading Act, 49 U.S.C. § 90(a), is not applicable to this case. In sum, Netumar's motion was neither "well-grounded in fact" nor "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. City of New York*, 762 F.2d at 254. Accordingly, Netumar and its counsel are hereby required to pay to Judal all reasonable costs, expenses and attorneys' fees incurred by Judal in opposing Netumar's motion for summary judgment.

### Conclusion

For the reasons set forth above, plaintiffs' motion for an order entering partial judgment with respect to the second and third causes of action is denied as premature and plaintiffs' motion for sanctions is denied. The Judal Defendants' motion to dismiss plaintiffs' first and fourth causes of action is denied. Plaintiffs' cross-motion for sanctions is granted, and defendants Judal and Schreer and their counsel are directed to pay to plaintiffs all reasonable costs, expenses and attorneys' fees incurred in opposing the Judal Defendants' motion to dismiss the fraud causes of action. Plaintiffs' request for summary judgment on their first and fourth causes of action is denied without prejudice. Furthermore, plaintiffs' motion for summary judgment dismissing Judal's first and third counterclaims is denied. Defendant Netumar's motion for summary judgment dismissing Judal's cross-claim and for sanctions is denied. Judal's cross-motion for summary judgment against Netumar on its cross-claim is granted, and the Court hereby refers this case to Magistrate Judge Gershon to conduct

---

**13.** *See* Memorandum Of Law In Opposition To Defendant Netumar Lines' Motion For Summary Judgment And In Support Of Defendant Judal Industries, Inc.'s Cross–Motion For Partial Summary Judgment On Its Cross–Claim Against Netumar Lines at 7.

an inquest for the purposes of determining Judal's damages. Finally, Judal's motion for sanctions is granted, and Netumar and its counsel are directed to pay to Judal all reasonable costs, expenses and attorneys' fees incurred by Judal in opposing Netumar's motion for summary judgment. The parties are directed to appear before this Court for a pre-trial conference on Thursday, October 21, 1993, at 10:30 a.m. Plaintiffs' request to file a summary judgment motion will be addressed at that time.

SO ORDERED.